NATIONAL COAL CO. *v.* CINCINNATI GAS COKE, COAL & MINING CO.

1. SALES—CONTRACTS—DAMAGES FOR BREACH—PERFORMANCE—COAL.

The term "West Virginia Smokeless coal," used in a contract for the sale of a quantity of coal, was, under the undisputed evidence, a trade term used to describe coal mined in a certain district, and defendant could not recoup for plaintiff's failure to deliver a literally smokeless coal if the coal delivered corresponded to the description.

2. SAME.

It was a proper question for the jury, under conflicting evidence, whether or not the coal delivered conformed to the contract on which plaintiff brought suit.

3. SAME—PROFITS—QUALITY—RECOUPMENT.

Upon defendant's notice of recoupment, it was entitled to recover the difference between the contract price and the price at which coal of a similar quality could be purchased in the open market, and without proper pleadings and proof that defendant could not purchase the same coal elsewhere and had no opportunity to furnish a substitute, it could not recover the profits lost.

4. TRIAL—CROSS-EXAMINATION—STATUTES.

Plaintiff was authorized, under Act No. 307, Pub. Acts 1909, to subpoena and call for cross-examination an agent of defendant who, at the time of the sale, was in defendant's employ.

Error to Kent; Perkins, J.   Submitted April 13, 1911. (Docket No. 77.)   Decided July 5, 1911.   Rehearing denied March 30, 1912.

Assumpsit by the National Coal Company against the Cincinnati Gas Coke, Coal & Mining Company for goods sold and delivered.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*George C. Brown,* for appellant.

*May & Dingeman,* for appellee.

STONE, J.   The plaintiff is a miner, and wholesale shipper and dealer in coal, having its offices in Baltimore, Md.   The defendant is also a wholesale coal dealer, having its offices at Cincinnati, Ohio.   This action is brought to recover $380.21, and interest, the balance claimed by plaintiff to be due it from defendant for coal sold to defendant under a written contract, consisting of correspondence, for coal shipped by plaintiff directly to defendant's various customers, or on orders therefor being received from the defendant.   The correspondence leading up to the contract was as follows:   On April 27, 1907, the defendant wrote the plaintiff the following letter:

"CINCINNATI, O., April 27, 1907.
"NATIONAL COAL COMPANY,
                    "Baltimore, Md.
"*Gentlemen:*
"Will you kindly advise, as soon as possible, your very best inside figures on contracts, until April 1, 1908, on your steam grades; also the tonnage of each grade you wish to contract for, until the above mentioned date?
"Hoping to hear from you by return mail, we beg to remain,
                    "Very truly yours,
                    "THE CINCINNATI GAS COKE,
                              COAL AND MINING CO.,
        [Signed]        "P. A. KAIN, A. M. E. D."
To which letter the plaintiff replied as follows:

"BALTIMORE, MD., May 2, 1907.
"THE CINCINNATI GAS COKE, COAL & MINING CO.,
   "Traction Bldg.,
      "Cincinnati, O.,
" *Gentlemen:*
   "We can quote you on our mine run Fairmount coal 90c., ¾ one dollar, and West Virginia Smokeless mine run 85c. per tons of 2,000 lbs. f. o. b. cars at mines. Can offer you for immediate acceptance 25,000 tons of each of the above grades, on contract until April 1, 1908, at the figures quoted for shipment in equal monthly proportions. Will be pleased to hear further from you.
               "Respectfully yours,
                  "NATIONAL COAL COMPANY,
                  [Signed]      "A. J. RYAN."

To which letter the defendant replied as follows.

                  "CINCINNATI, O., May 14, 1907.
"NATIONAL COAL COMPANY,
            "Baltimore, Md.

"*Gentlemen:*
   "Referring to your favor of the 2nd inst., wish to advise that we hereby accept your proposition on 25,000 tons each of Fairmount run of mine coal, at $0.90 per net ton, and ¾ at $1.00 per net ton, and West Virginia Smokeless run of mine, at $0.85 per net ton, all f. o. b. cars mines, for shipments made between now and April 1, 1908, and will immediately commence to send in orders in equal monthly proportions.
   "Our object in writing this letter is to have you reserve the above mentioned tonnage for us.
                  "Very truly yours,
      "THE CINCINNATI GAS COKE, COAL & MINING Co.
      [Signed]      "P. A. KAIN, A. M. E. D."

The plaintiff replied to this letter as follows:

                  "BALTIMORE, MD., May 16, 1907.
"THE CINCINNATI GAS COKE, COAL & MINING CO.,
      "Traction Bldg.,
            "Cincinnati, O.

' *Gentlemen:*
   "Your letter of May 14 to hand. We will accept proposition, subject to car supply, strikes and other accidents beyond our control. You to take the coal in equal monthly proportions, in any kind of equipment, steel hop-

pers, wooden hoppers, and steel and wooden gondolas, whichever are available.

"Very respectfully yours,

"NATIONAL COAL COMPANY,

[Signed] "JOHN F. O'MEARA."

Prior to entering into this contract, the plaintiff had shipped the defendant a car load of coal represented to be West Virginia Smokeless coal. About 4,000 tons of coal were shipped under the contract, amounting to about $3,450, all of which had been settled for except the claimed balance here sued for.

The declaration was on the common counts in assumpsit. The plea was the general issue, with notice of recoupment by reason of inferior quality, poor preparation, and contracts with third parties canceled, and damages sustained thereon by defendant by reason of the coal not being smokeless coal, as was contracted for. On the trial defendant's recoupment was limited to the contract made by it with Fleischmann & Co., of Cincinnati, Ohio, to deliver certain of the coal contracted to be furnished by the plaintiff.

The principal question arising upon the trial was whether the plaintiff had complied with its contract by shipping West Virginia Smokeless coal on orders received therefor from defendant, it being claimed on behalf of the plaintiff on the trial that the term "West Virginia Smokeless" coal was a trade or commercial name, meaning any coal mined on the Grafton & Belington Branch of the Baltimore & Ohio Railroad. On the part of the plaintiff there was positive and direct evidence that "West Virginia Smokeless" is the name attributed to all that coal on the Grafton & Belington Branch of said railroad; that it is known commercially as "West Virginia Smokeless" coal; and that that was the kind of coal shipped by the plaintiff upon the defendant's orders from the district named; and plaintiff's evidence tended to show that it had performed its contract.

After the plaintiff's case was closed, and while defend-

ant was offering evidence, the following occurred between court and counsel:

"*The Court:* Pardon me. It seems to me, Mr. Brown and Mr. May, that this case must stand or fall upon the proposition as to whether or not the coal furnished was West Virginia Smokeless coal, and as to whether or not West Virginia Smokeless coal, as shown by the trade, is gotten from these mines on the Baltimore & Ohio Branch between Grafton and Belington.

"*Mr. May:* I do not think there is anything else to the case, if your honor please, I never have thought so.

"*Mr. Brown:* No question about that being the basis of the case at all."

We have read this record very carefully, and it appears very clearly to have been the claim of the plaintiff, supported by testimony, that "West Virginia Smokeless" coal is the name attached and given to the coal mined and shipped on the Grafton & Belington Branch of the Baltimore & Ohio Railroad; that the same is known commercially as "West Virginia Smokeless" coal, and that all of the coal in question furnished by the plaintiff was taken from mines located on said branch. There was some evidence on the part of the defendant tending to question the claim of the plaintiff, and tending to show a breach of the contract by the plaintiff.

The trial judge refused to direct a verdict in the cause, but submitted the case to the jury under what appears to have been a very full and fair charge. The claims of the plaintiff were stated in the charge, in substance to be, that in each instance it claimed that the shipments made by it of the coal ordered by the defendant were in accordance with the terms and conditions of the contract as to the kind of coal shipped; that West Virginia Smokeless coal is a name known to the trade, and includes coal mined from the several mines on the Grafton & Belington Branch of the Baltimore & Ohio Railroad, in West Virginia. That it was claimed by plaintiff that the defendant knew, at the time the contract was entered into, where the coal covered by this contract was to come from,

and from what particular mine; and, that later, during the transaction between them, the plaintiff claimed that the defendant learned through correspondence and otherwise, where the coal delivered under this contract came from, and was to come from in the future; and, after such knowledge, continued to place orders for coal to be delivered under the contract; that the defendant, from time to time, paid various amounts falling due under this contract for coal delivered, without complaint, until finally, after making a payment of $1,000 in January, 1908, it refused to pay the balance sought to be recovered in this action. That plaintiff further claimed that the contract was complied with on its part as to the kind and quality of coal to be delivered thereunder, and which was actually delivered thereunder.

The jury was also informed of the claim of the defendant in that it denied that the coal delivered under the contract by the plaintiff company was West Virginia Smokeless coal, as that coal is known to the trade; but insisted in its defense that other coal was delivered of a cheaper and inferior grade than that called for by the contract, and that, by reason of the failure on the part of the plaintiff to deliver the coal contracted for, it claimed to have suffered certain damages, which it sought to recoup against the plaintiff in the action.

After giving certain instructions as to the rules of evidence to be observed by the jury, the court used the following language, which is covered by defendant's eighth assignment of error:

"The question arises as to what constitutes, under the evidence in this case, West Virginia Smokeless coal. It is apparent that the term is but a trade-name, applied to a certain class of coal secured from a certain locality, and that the term 'smokeless,' does not technically mean that the coal will not emit smoke when burned; all coal, I apprehend, produces more or less smoke. As applied to this case, I instruct you that under the undisputed evidence in the case, West Virginia Smokeless coal, as the term was used in the contract between these parties, is

such coal as was mined on the Grafton & Belington Branch of the Baltimore & Ohio Railroad, in West Virginia, and if you find that the coal furnished and delivered by the plaintiff to defendant, or on its order under this contract, was coal mined in the district named, your verdict will be for the plaintiff, for the amount claimed, with interest."

In the same connection, the court charged the jury, that if they found that the plaintiff in its performance of this contract, delivered coal from other mines than those upon the Grafton & Belington Branch of the Baltimore & Ohio Railroad, when the order called for West Virginia Smokeless coal, then, and in that case, if they so found, such delivery would not be in accordance with provisions of the contract; that if they failed to find that the coal delivered by the plaintiff was West Virginia Smokeless coal, as the contract provides, then they should consider the question of recoupment, and the defendant's damages. And upon the subject of recoupment the court, in charging the jury, used the following language, which is made the basis of defendant's ninth assignment of error:

"Where the coal was purchased as West Virginia Smokeless coal for resale, as is shown in this case, and it is not disputed, and where it is resold with the like representation as to character and kind, if you should find that it was resold by the defendant company to Fleischmann & Co., with the like representation as to character and kind, then and in that case, the defendant may recover the direct and natural loss it may have sustained, which loss would be the difference between the value of the coal it was entitled to under its contract, and the value of the coal the evidence shows the defendant actually received. In other words, the measure of defendant's damages will be the difference between the value of the coal delivered, and the value of the coal that should have been delivered, under the contract, at the place of delivery."

The seventh assignment of error is that the court erred in refusing defendant's second request to charge, which was as follows:

The damages defendant would be entitled to recover

on the cancellation of such contracts, would be the difference between the cost of the coal to defendant, and the price it was receiving under such contracts with third parties."

The jury returned a verdict for the plaintiff for the full amount of its claim, with interest; and the defendant had brought the case into this court upon a bill of exceptions.

Recurring to the eighth assignment of error, defendant claims that the charge of the court, "that under the undisputed evidence in the case West Virginia Smokeless coal, as the term was used in the contract between these parties, is such coal as was mined on the Grafton & Belington Branch of the Baltimore & Ohio Railroad," was erroneous. It is very evident that counsel seeks to have the court construe the term "smokeless" literally, but we think, from a careful reading of the record, that it may be said to be undisputed' that the term "West Virginia Smokeless" coal, had a commercial and trade significance and application, well known to the trade, and specifically known, as this record shows, to the agent of the defendant at the time the contract was entered into.

While it is true that some other grades of coal mined in West Virginia are sometimes designated as smokeless coal, the record fails to show that there is any coal characterized in the trade as "West Virginia Smokeless" coal, except that which was handled and sold by the plaintiff from the district named. All of the coal shipped bore a uniform freight rate, which indicated that it was mined at or near the same locality, and evidently upon the same branch of railroad, from which West Virginia Smokeless coal derives its name, as claimed by plaintiff. We think that the question was properly and fairly submitted by the trial judge to the jury; that the court did not err when it stated what the undisputed evidence in the case showed, and that the question of fact was properly left to the jury.

Referring to the seventh assignment of error, based upon the refusal to give defendant's second request, it

should be borne in mind that there was no claim on the part of the defendant that, at the time of entering into the contract with the plaintiff, the latter had any knowledge of the subcontract, or any of the terms thereof, with Fleischmann & Co.

In any event, had it proven plaintiff responsible for the breach, the measure of damages would have been the difference between the price at which plaintiff agreed to sell coal of this particular character, and the price at which it could have been secured in the open market at the time and place of delivery. There is no evidence that the defendant was not able to get coal of the same quality elsewhere, and that it did not have an opportunity to furnish a substitute. We recognize the rule contended for by the defendant, but do not think that either by its pleadings or proof it is in a position to invoke the rule. The rule is that the measure of damages for failure to deliver goods sold, where they can be obtained in the open market, is the additional cost of the goods; where they cannot be obtained in the market, the purchaser is entitled to recover the profits lost through the fault of the seller. *F. W. Kavanaugh Manfg. Co.* v. *Rosen,* 132 Mich. 44 (92 N. W. 788, 102 Am. St. Rep. 378); *Den Bleyker* v. *Gaston,* 97 Mich. 354 (56 N. W. 763); *Thomas Iron Co.* v. *Jackson Iron Co.,* 131 Mich. 130 (91 N. W. 137). We think the charge of the court upon the subject of recoupment was as favorable to the defendant as it could have asked under this record. The jury found no occasion to apply any rule of damages on the subject of recoupment, as they found no breach of contract by plaintiff.

We have examined the other assignments of error, both as to the examination of the witness Kain and the refusal of the court to grant a new trial, but we discover no error in the manner in which the questions involved were disposed of by the trial court. The right of the plaintiff to call the witness Kain for cross-examination under Act No. 307, Pub. Acts 1909, cannot be questioned, it appearing that said witness was "a person who at the time of the

happening of the transaction out of which such suit or proceeding grew was an employé or agent of the opposite party."

The judgment below will be affirmed.

Ostrander, C. J., and Bird, Hooker, and Blair, JJ., concurred.