MAKI v. MOHAWK MINING CO.

1. CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS—STATUTES —CROSS-EXAMINATION.

Act No. 307, Pub. Acts 1909 (5 How. Stat. [2d Ed.] § 12865), granting to either party the right to call as a witness the opposite party, his agent, or employee, or any one who may have been such agent or employee at the time of the transaction in question and permitting cross-examination, etc., does not deny a defendant the equal protection of the laws.

176 MICH.—32.

2. MASTER AND SERVANT—INSPECTION—SAFE APPLIANCES.

It is the master's duty not only to furnish a safe cable for a hoisting apparatus in its mine, but also to provide reasonable inspection to see that it remains safe.[1]

3. SAME—NEGLIGENCE—EVIDENCE.

Evidence that a cable, having a supposed breaking strain of 7½ tons and a safe working strain of 2½ to 3 tons, parted under a load of about 486 pounds, that the broken end was badly frayed and weak, tended to support plaintiff's claim of negligent failure to inspect.

4. SAME—INSTRUCTING SERVANT—HOISTING DEVICE—USE.

Where plaintiff had no instructions to ascend the shaft by walking up the footwall of the mine in which he was employed, and had been told by the servant to whom he looked for orders and instruction to aid his ascent by taking hold of the bucket, and neither had previously done the work in which they were engaged at the time of the accident, and defendant had provided no ladders, it could not be said that plaintiff assumed the risk or was guilty of contributory negligence for ascending with the aid of the bucket connected with defendant's hoisting device which broke and caused injuries to plaintiff.[2]

Error to Houghton; Streeter, J. Submitted January 22, 1913. (Docket No. 7.) Decided July 18, 1913.

Case by Alex. Maki against the Mohawk Mining Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Allen F. Rees,* for appellant.

*O'Brien & Le Gendre (George O. Driscoll,* of counsel), for appellee.

MOORE, J. The plaintiff was employed in the mine of defendant. While so employed he received injuries

[1] Upon the duty of a master to inspect tools or implements furnished servant, see note in 1 L. R. A. (N. S.) 944.

[2] As to servant's assumption of risk from latent danger or defect, see note in 17 L. R. A. (N. S.) 76.

for which this suit was brought. From a verdict and judgment of $2,000 in his favor the case is brought here by writ of error.

The errors relied on are grouped as follows:

"(1) The provisions of Act No. 307, Laws of 1909, permitting so-called cross-examination under certain circumstances are unconstitutional.

"(2) There is no evidence in the record of negligence on the part of the defendant.

"(3) There is no evidence in the record of any failure in the duty of the defendant with reference to inspection.

"(4) The defendant company had provided a safe and proper way for ascending the shaft without using the means adopted by the plaintiff.

"(5) On the record in this case the plaintiff was guilty of contributory negligence as a matter of law, and also assumed the risk of injury, under the circumstances of the case.

"(6) The judgment should be reversed because of improper and prejudicial remarks made by plaintiff's counsel in the course of the trial.

"(7) There were errors in the admission of testimony, which should require a reversal of the judgment.

"(8) There was error in the charge of the court with respect to the duty of inspection."

Of these assignments of error counsel say:

"We have considered that the questions raised are dependent directly upon well-known and well-understood general principles relating to actions for personal injuries, and we have, therefore, refrained, to a large extent, from the citation or quotation of specific authorities."

Before the questions involved can be properly considered, a brief statement of facts is essential. The plaintiff is a Finn, and when hurt was something more than 22 years of age. He was employed as a trammer in the mine, until the day of the accident, when he was set to work as a mucker in shaft No. 4, which has an incline of about 36 degrees. The shaft

was completed to the thirteenth level, and from that point it was sunk to where the fourteenth level was to begin, and the work had begun in cutting out the plats at this level. This work had proceeded down almost perpendicularly for about 20 feet. In doing this work the rock was hoisted in buckets to the thirteenth level. This hoisting arrangement consisted of a trolley cable, rigidly fastened at the upper end to one of the timbers at the thirteenth level and at the lower end to an eyebolt driven into the rock in the hanging wall of the shaft near the bottom. On this cable ran a carriage or trolley. The hoisting rope ran from the puffer engine, which supplied the power, over a guiding pulley at the thirteenth level, and then down to the trolley or carriage, where it passed over a sheave in the trolley down to a sheave on the bucket, and up to a permanent fastening on the trolley. When the bucket was at the bottom of the shaft to be filled, it would rest on the floor of the shaft below the trolley. When the engine was operated the first effect of the winding up of the hoisting rope would be to raise the bucket from the foot of the shaft to the trolley. As the shell of the sheave on the bucket engaged with the trolley, the bucket could go no further in that direction; the effect of the hoisting rope was to pull the trolley itself with the bucket suspended therefrom, up on the trolley cable until it reached the plat, or platform, of the thirteenth level, where the bucket would strike against guiding skids and be dumped.

The plaintiff was sent for the first time into the place where the plat was being cut, on the morning in question, with another green hand, and a third man who was an experienced man, and was called the old mucker. Neither of the other two men had done work of this character before. The record indicates fairly that the old mucker was expected to direct the new men how to work. When dinner time

came, the bucket had been loaded, and as it started up the shaft the old mucker took hold of it at the rim, with his right hand, and told the plaintiff to take hold of it with his left hand, and the two gave their disengaged hands to the third man, and as the bucket ascended the men followed it, their feet still on the foot wall, and were steadied and partly sustained and pulled by the ascending bucket. They had got out of the nearly perpendicular place and ascended up the shaft, where it was at an angle of 36 degrees some distance, when they let go of the bucket, and after it had passed on about 10 feet the cable parted about 2 feet from the end that was fastened to the trolley or carriage, and the loaded bucket came tumbling down the shaft, and before the plaintiff could get out · of the way the bucket struck him and inflicted the injuries for which he sued. The place where the three men worked was at the bottom of the shaft so that, when the bucket began to ascend with its load, and they were at work, they were always below the bucket.

Counsel for appellant has the following to say of the cable which drew the bucket:

"There is no question on the record but that a sufficient rope was furnished. It was the same kind of a rope which had been furnished for all the sinking in the mine. Indeed, it was the same apparatus. The testimony shows without dispute that it was a comparatively new rope; that it was a half-inch wire rope, of which the breaking strain was from 7½ to 9 tons, and the safe working strain or load from 2½ to 3 tons, while the actual load carried by the rope on that slope was about 486 pounds. This load was when it was carrying the loaded bucket."

The plaintiff disputed the statement that the cable was comparatively new. We shall have occasion to recur to this subject later.

Upon the trial a witness was called by the plaintiff who was in the employ of the defendant at the time of the accident, but was not in its employ when called

as a witness. This gives rise to the first assignment of error which is discussed.

1. Is Act No. 307, Public Acts of 1909 (5 How. Stat. [2d. Ed.] § 12865), unconstitutional? The provisions read as follows:

"Hereafter in any suit or proceeding in any court of law or equity in this State, either party, if he shall call as a witness in his behalf the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

It is urged by counsel:

"The pertinent provision of the Federal Constitution is that part of the fourteenth amendment as follows: 'Nor (shall any State) deny to any person within its jurisdiction the equal protection of the laws.' Our own Constitution also provides perfect equality in the law for all persons. * * * Had the legislature confined the operation of the act to cross-examination of persons in the employ of the opposite party at the time of the trial, or at the time of testifying, we might have a different question, as in such a case there may be some presumption that the witness so situated may be, to some extent, under the dominion or influence of the employer, and for that reason the act might be held to have made a proper classification with respect to witnesses; but no classification can be permitted unless there is a just, underlying distinction which will justify such classification. But in attempting to confer this right upon one or two litigants as against the other, under circumstances where there is no possibility of any distinction to justify the granting of such right to one and not to the other, to that extent at least, the

act must, in its operation and of necessity, put the
parties in an unequal position before the court. By
it·such a law will confer unequal privileges, with no
distinction relating to the parties or the witnesses
which could justify such a classification."

Counsel cite no authority upon this proposition.
The act in question has been construed by this court
in *Antosik* v. *Alkali Co.,* 166 Mich. 415 (132 N. W.
80) ; *Jones* v. *Railroad Co.,* 168 Mich. 1 (133 N. W.
993) ; *Johnson* v. *Carbide Co.,* 169 Mich. 651 (135 N.
W. 1069). In *National Coal Co.* v. *Mining Co.,* 168
Mich. 198 (132 N. W. 88), the witness called was not
then in the employ of the opposite party, but it was
held that the provisions of the act allowed the witness
to be called. It is true the constitutional question was
not raised in any of these cases. It is apparent from
what we have quoted from the act that its purpose
was to do away with a technical rule of evidence, and
to facilitate getting at the facts of a given case, so
that it might be tried upon its merits. We do not see
where this does an injustice to any one. No one has
a vested right in a rule of evidence. See 8 Cyc. p.
924; *In re Patterson's Estate,* 155 Cal. 626 (102 Pac.
941, 26 L. R. A. [N S₁] 654, 132 Am. St. Rep. 116,
18 Am. & Eng. Ann. Cas. 625). The legislation
creates no class and no preferences.

Groups 2, 3, and 8 may be considered together. It
was the theory of the defendant that, having fur-
nished a safe cable, it was for the men to make all
further needed inspection. It was the view of the
judge that, not only must the defendant furnish a
safe cable, but that it was charged with the duty of
making reasonable inspection to see that it remained
safe. There is testimony that the defendant regarded
it as the duty of the miners to make the inspection,
while they in turn regarded it as the duty of the tim-
ber men. The case presents an illustration of the old
adage that what is everybody's business is no one's

business. There is testimony to the effect that after the cable parted the end was cut off, that it was badly frayed, and appeared to be in a weakened condition. It is not a forced inference to say, if a half-inch cable, having a breaking strain of 7½ to 9 tons, and a safe working strain of 2½ to 3 tons, gives way when carrying a bucket which, with its load, weighs 486 pounds, with such added weight as the three men might have imposed upon it, under the conditions stated, that its usefulness as a cable was greatly impaired. Especially so as its parting, whether the men were part way up the shaft or were in the bottom of the hole, might work so disastrously. See *Van Dusen* v. *Letellier,* 78 Mich. 492 (44 N. W. 572) ; *Morton* v. *Railroad Co.,* 81 Mich. 423 (46 N. W. 111) ; *La Fernier* v. *Wrecking Co.,* 129 Mich. 596 (89 N. W. 353) ; *Panela* v. *Mining Co.,* 165 Mich. 329 (130 N. W. 686).

4. It is said the defendant company had provided a safe and proper way for ascending without using the means adopted by the plaintiff. There were no ladders in the shaft, but counsel argues that the plaintiff might have walked up on the foot walls. It has already appeared that plaintiff had never done this work before, and was never in this place before. He had no instructions to go up on the foot wall unaided. He did what he was told to do by the old mucker, to whom he was supposed to look for instructions. What we have said in relation to this feature of the case will dispose of group 5. See Baldwin on Personal Injuries (2d Ed.), § 368; *Johnson* v. *Chemical Co.,* 152 Mich. 84 (115 N. W. 1043).

6. It is said the case should be reversed because of prejudicial remarks of counsel. A reference to the record shows that counsel was examining a witness who evidently thought that he knew more about the conduct of a trial than did court or counsel, and while we cannot commend the conduct of counsel, it may in a measure be excused, especially as there is nothing

to indicate that it did any mischief. The case was carefully tried, and we find no reversible error.

Judgment is affirmed.

STEERE, C. J., and McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred. STONE, J., did not sit.