PEOPLE v DOLPH-HOSTETTER

Docket No. 242356. Submitted January 7, 2003, at Grand Rapids. Decided
    May 22, 2003, at 9:05 A.M. Leave to appeal sought.

    Lisa Dolph-Hostetter was charged with conspiracy to commit open
    murder and first-degree murder for her involvement in a 1996
    shooting. At the time of the murder, the defendant was married,
    but had divorced before her preliminary examination. Pursuant to a
    recent amendment of the marital-communications privilege, MCL
    600.2162, which gave the testifying spouse the right to decide
    whether to testify against his spouse, the prosecution called the
    defendant's former husband as a witness at the preliminary exami-
    nation. The defendant moved to exclude the former husband's testi-
    mony, and the district court denied the motion. After the defen-
    dant's arraignment in the St. Joseph Circuit Court, the defendant
    filed a motion to exclude the former husband's testimony at trial on
    grounds that its admission violated the ex post facto clauses of the
    federal and state constitutions. The circuit court, James P. Noecker,
    J., agreed and granted the motion. The prosecution filed an applica-
    tion for leave to appeal to the Court of Appeals. The Court of
    Appeals, METER, P.J., and GRIFFIN and OWENS, JJ., in lieu of granting
    leave to appeal, disposed of the case by order, remanding the mat-
    ter to the circuit court, concluding that many of the material state-
    ments did not fall within the marital-communications privilege.
    *People v Dolph-Hostetter*, unpublished order of the Court of
    Appeals, entered February 21, 2002 (Docket No. 236246). The pros-
    ecution filed a delayed application for leave to appeal to the
    Supreme Court, which Court remanded the matter to the Court of
    Appeals to address the defendant's ex post facto argument in light
    of recent United States Supreme Court precedent. *People v Dolph-
    Hostetter*, 466 Mich 883 (2002).

    On remand, the Court of Appeals *held*:

    Public Act 182 of 2000, effective October 1, 2000, amended the
    marital-communications privilege to provide that the decision
    whether to testify about marital communications lies with the per-
    son testifying. MCL 600.6162(7). Here, the defendant and the testi-
    fying spouse were married at the time of the 1996 murder, but
    divorced before their arrests in 2000. Applying the amendment in

the instant case to marital communications that occurred before October 1, 2000, will not violate the ex post facto clauses of the United States and Michigan constitutions because the amendment only renders witnesses competent to testify, if they choose, or permits the admission of evidence that was previously inadmissible. The amendment does not make criminal any prior act not criminal when committed; it does not increase the degree, severity, or nature of any crime committed before its passage; it does not increase the punishment for anything done before its adoption; and it does not lessen the quantum of evidence necessary to obtain a conviction when the crime was committed.

Reversed and remanded.

HUSBAND AND WIFE — MARITAL-COMMUNICATIONS PRIVILEGE — CONSTITUTIONAL LAW — EX POST FACTO LAWS.

An amendment to the marital-communications privilege giving the testifying spouse the right to decide whether to testify did not operate as an ex post facto law when applied to marital communications that occurred before the effective date of the amendment (US Const, art I, § 10, cl 1; Const 1963, art 1, § 10; MCL 600.2162[7]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey C. Middleton*, Prosecuting Attorney, for the people.

*Barnes & Thornburg* (by *George E. Horn, Jr.*) for the defendant.

Before: METER, P.J., and NEFF and DONOFRIO, JJ.

METER, J. This opinion addresses the application of an amendment of MCL 600.2162, which sets forth, among other things, the scope of the marital-communications privilege.[1] Before the amendment in question, MCL 600.2162(2) specified that "a married per-

---

[1] This case concerns solely the marital-communications privilege, which is distinct from the spousal privilege, although both emanate from MCL 600.2162. The spousal privilege is applicable only if the witness and the spouse are married at the time of trial, while the marital-communications privilege is applicable at any time during the marriage or afterwards, as long as the communication occurred during the marriage. See *People v Hamacher*, 432 Mich 157, 161-162; 438 NW2d 43 (1989).

son or a person that has been married previously shall not be examined as to any communication made between that person and his or her spouse or former spouse during the marriage." The amendment, enacted by 2000 PA 182 and effective October 1, 2000, changed the law to provide that the decision whether to testify about marital communications lies with the person testifying. See MCL 600.2162(7) ("[A] married person or a person who has been married previously shall not be examined in a criminal prosecution as to any communication made between that person and his or her spouse or former spouse during the marriage without the consent of the person to be examined.") The circuit court concluded that applying the amendment in the instant murder case to marital communications that occurred before October 1, 2000, would violate the ex post facto clauses of the United States and Michigan constitutions, US Const, art I, § 10, cl 1; Const 1963, art 1, § 10. We disagree and reverse the decision of the circuit court to suppress certain material testimony in this case.

The facts pertinent to this appeal are undisputed. In February 1996, Carol Knepp was fatally shot while driving her car in St. Joseph County. The police investigation of the shooting resulted in the arrest of three people in 2000: defendant, Ronald Hostetter, and Dale Alan Smith. Defendant was charged with conspiracy to commit open murder and first-degree murder. In October 2000, Hostetter pleaded guilty to a charge of second-degree murder in exchange for agreeing to testify against defendant and Smith.[2] At the time of

---

[2] In June 2001, Smith was convicted by a jury of conspiracy to commit murder, accessory after the fact, and possession of a firearm during the commission of a felony.

the murder in 1996, defendant and Hostetter were married. They divorced in 1997, before their arrests. Thus, they were divorced at the time of Hostetter's testimony at defendant's preliminary examination.

At the time scheduled for defendant's preliminary examination, the prosecutor informed the court of his intent to call Hostetter as a witness against defendant after October 1, 2000, the effective date of the amendment in question. Subsequently, defense counsel informed the court of defendant's intention to invoke her marital privilege to prevent Hostetter from testifying. Defendant then moved to exclude Hostetter's testimony. The district court denied defendant's motion, the preliminary examination proceeded, and Hostetter provided inculpatory evidence against defendant. Following her arraignment in circuit court, defendant filed a motion to exclude Hostetter's testimony at trial on the grounds that its admission would violate the ex post facto clauses of the federal and state constitutions. The circuit court agreed, and the prosecutor filed an application for interlocutory leave to appeal in this Court.[3]

This Court, in lieu of granting the application for leave to appeal, disposed of the case by order and remanded the matter to the circuit court, concluding that many of the material statements about which Hostetter testified did not fall within the marital-communications privilege because they were made in the presence of Smith, a third party. *People v Dolph-Hostetter*, unpublished order of the Court of Appeals, entered February 21, 2002 (Docket No. 236246). Sub-

---

[3] The prosecutor concluded that a prosecution of defendant without Hostetter's testimony about marital communications between Hostetter and defendant would not be feasible.

sequently, the prosecutor, evidently not satisfied with the prospect of using solely the nonprivileged statements in his prosecution of defendant, filed a delayed application for leave to appeal this Court's order in the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court, directing us to "address the ex post facto issue presented in this case in light of *Carmell v Texas*, 529 US 513 [120 S Ct 1620; 146 L Ed 2d 577] (2000)." *People v Dolph-Hostetter*, 466 Mich 883 (2002). Our analysis of *Carmell* compels us to reverse the circuit court's ruling.[4]

In *Carmell, supra* at 522, the United States Supreme Court, in discussing the type of laws that would violate the constitutional prohibition against ex post facto laws, quoted the following statement by Justice Chase in *Calder v Bull*, 3 US 386, 390; 1 L Ed 648 (1798):

"I will state *what laws* I consider *ex post facto laws*, within the *words* and the *intent* of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the

---

[4] We note that the admission or exclusion of evidence by a trial court is generally reviewed by this Court for an abuse of discretion. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). However, if the admissibility of evidence turns on the construction of a rule of evidence, statute, or, as in this case, a constitutional provision, review is de novo. See *id.* and *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

offence [sic], *in order to convict the offender.*" [Emphasis in *Calder.*]

This exposition by Justice Chase on ex post facto laws was also cited favorably by the United States Supreme Court in *Collins v Youngblood,* 497 US 37, 42, 49; 110 S Ct 2715; 111 L Ed 2d 30 (1990), in which the Court found departures from Justice Chase's exposition to be unjustified. Moreover, in *People v Stevenson,* 416 Mich 383, 396; 331 NW2d 143 (1982), the Michigan Supreme Court noted that our state adopted Justice Chase's definition of ex post facto laws by reference when deciding *In re Hoffman,* 382 Mich 66, 72 n 1; 168 NW2d 229 (1969). Accordingly, Justice Chase's 1798 exposition holds true to the present day. In the instant case, defendant contends that an application of the amendment in question to marital communications occurring before October 1, 2000, would fall within Justice Chase's fourth category of ex post facto laws.

The fourth category was also at issue in *Carmell.* See *Carmell, supra* at 522. In *Carmell, supra* at 517, the Court considered a Texas statute—Tex Code Crim Proc Ann, Art 38.07—applicable to the prosecution of sexual offenses. Before September 1, 1993, the statute required that, for a prosecutor to obtain a conviction for a sexual offense, either (1) the victim must have informed another person of the alleged offense within six months of the offense or (2) the victim's allegations must have been corroborated by other evidence, unless the victim was less than fourteen years old at the time of the offense. *Carmell, supra* at 517. An amendment expanded the child-victim exception to apply to persons under the age of eighteen. *Id.* at 518. Some of the allegations against the defendant in

*Carmell* involved a victim between the ages of fourteen and eighteen,[5] and the *Carmell* Court thus analyzed whether applying the amendment to incidents occurring before September 1, 1993, violated the Ex Post Facto Clause of the United States Constitution. *Id.* at 519.

The Court found that applying the amendment to the earlier incidents did indeed violate the prohibition against ex post facto laws because the amendment essentially lowered the quantum of proof necessary to convict the accused. *Id.* at 530. The Court stated:

> Article 38.07 is unquestionably a law "that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence [sic], in order to convict the offender." Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony *and* corroborative evidence. *The amended law, however, changed the quantum of evidence necessary to sustain a conviction;* under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence. Under any commonsense understanding of *Calder's* fourth category, Article 38.07 plainly fits. Requiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence is surely "less testimony required to convict" in any straightforward sense of those words. [*Id.* (emphasis added).]

The *Carmell* Court repeatedly stressed that the application of the statutory amendment to the inci-

---

[5] Evidently, the defendant in *Carmell* was convicted of certain sexual offenses (1) on the basis of incidents occurring before September 1, 1993, (2) without any "outcries" by the victim within six months of the offenses, and (3) without additional evidence to corroborate the victim's testimony.

dents in question violated the prohibition against ex post facto laws not because the amendment changed a rule of procedure or evidence but because it lowered the quantum of evidence necessary to obtain a conviction. The Court stated, "The fact that the amendment authorizes a conviction on less evidence than previously required, however, brings it squarely within the fourth category." *Id.* at 531. It further stated, "A law reducing the quantum of evidence required to convict an offender is as grossly unfair as, say, retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof . . . ." *Id.* at 532. The Court also stated:

> And we think there is no good reason to draw a line between laws that lower the burden of proof and laws that reduce the quantum of evidence necessary to meet that burden; the two types of laws are indistinguishable in all meaningful ways relevant to concerns of the *Ex Post Facto* Clause. [*Id.* at 541.]

The amendment at issue in the instant case is simply not analogous to the amendment at issue in *Carmell.* Indeed, the amendment to the marital-communications privilege does not alter the quantum of evidence necessary to convict a person of any crimes; it simply affects what evidence may be introduced at a criminal trial. As noted in *Carmell, id.* at 533 n 23:

> We do not mean to say that every rule that has an effect on whether a defendant can be convicted implicates the *Ex Post Facto* Clause. Ordinary rules of evidence, for example, do not violate the Clause. . . . Rules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any given case. More crucially, such rules, by simply permitting evidence to be admitted at

trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption. Therefore, to the extent one may consider changes to such laws as "unfair" or "unjust," they do not implicate the same *kind* of unfairness implicated by changes in rules setting forth a sufficiency of the evidence standard. Moreover, while the principle of unfairness helps explain and shape the Clause's scope, it is not a doctrine unto itself, invalidating laws under the *Ex Post Facto* Clause by its own force. [Emphasis in *Carmell.*]

In the instant case, the amendment at issue, "by simply permitting evidence to be admitted at trial, do[es] not at all subvert the presumption of innocence, because [it] do[es] not concern whether the admissible evidence is sufficient to overcome the presumption." *Id.* Any unfairness resulting from applying the amendment to marital communications occurring before the effective date of the amendment does not result in a violation of the ex post facto clause. *Id.*

The circuit court in the instant case placed great emphasis on whether the amendment was "evenhanded" as mentioned in the above excerpt from *Carmell.* The court found that to survive an ex post facto challenge, an after-the-fact change in the rules of evidence must meet the test of "evenhandedness" and not inure solely to the benefit of the prosecutor and to the disadvantage of the accused. The court could not conceive of a situation in which the amended statute would benefit the accused and thus found an ex post facto violation. It is shortsighted, however, to adopt a rule of "evenhandedness" from the third sentence of the above excerpt and to discard the remainder of the excerpt. Indeed, immediately following the "evenhanded" comment, the

*Carmell* Court stated, *"[m]ore crucially*, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption." *Id.* (emphasis added). Again, the amended statute at issue does not concern whether "the admissible evidence is sufficient to overcome the presumption [of innocence]." *Id.*

*Moreover, the Carmell* Court took care to distinguish the amended Texas statute from the types of changes in rules of competency and evidence at issue in *Thompson v Missouri,* 171 US 380; 18 S Ct 922; 43 L Ed 204 (1898), and *Hopt v Utah,* 110 US 574; 4 S Ct 202; 28 L Ed 262 (1884). See *Carmell, supra* at 542-547. In *Hopt, supra* at 587-588, the United States Supreme Court addressed a statutory amendment that repealed, after the alleged offense, a statute specifying that convicted felons were incompetent to be called as witnesses. The Court held that the amendment was not an ex post facto law. *Id.* at 589-590. The majority opinion in *Carmell* quoted *Hopt* as follows:

"Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; *nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.*

"The crime for which the present defendant was indicted, the punishment prescribed therefor, and *the quantity or the*

*degree of proof necessary to establish his guilt,* all remained unaffected by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged." [*Carmell, supra* at 543-544, quoting *Hopt, supra* at 589-590 (emphasis added by *Carmell*).]

The United States Supreme Court followed *Hopt* in *Thompson, supra* at 384-387. In *Thompson,* certain letters the defendant had written, including some written to his wife, were admitted in his murder trial to be compared against two handwritten, incriminating notes. *Id.* at 381. Apparently, at the time of the trial, the applicable common law prohibited the admission into evidence of these types of writings for the sole purpose of making handwriting comparisons. *Id.* Therefore, the defendant's conviction was reversed and he was granted a new trial. *Id.* Subsequently, the Missouri legislature adopted a law that permitted the admission into evidence of handwriting exemplars, provided that the trial judge was convinced of their authenticity. *Id.* The Court held that

admitting the challenged letters into evidence during the defendant's retrial did not violate the constitutional prohibition against ex post facto laws. *Id.* at 386-388. The *Thompson* Court stated:

> If persons excluded upon grounds of public policy at the time of the commission of an offense, from testifying as witnesses for or against the accused, may, in virtue of a statute, become competent to testify, we cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. . . . The statute did not require 'less proof, in amount or degree,' [see *Hopt, supra* at 590,] than was required at the time of the commission of the crime charged upon him. *It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible,* and did not disturb the fundamental rule that the state, as a condition of its right to take the life of an accused, must overcome the presumption of his innocence, and establish his guilt beyond a reasonable doubt. [*Thompson, supra* at 387 (emphasis added).]

The *Carmell* Court distinguished both *Hopt* and *Thompson* because they simply addressed the admissibility of certain types of evidence but did not alter the evidence needed to convict the accused. See *Carmell, supra* at 542-547. Similarly, the amendment at issue in the instant case did not alter the amount or nature of the evidence necessary to convict defendant; the amendment is more analogous to those at

issue in *Hopt* and *Thompson*, the retroactive applica-
tion of which did not violate the prohibition against
ex post facto laws.

*Carmell* and the longstanding precepts of the cases
cited therein indicate that the application of the
amendment at issue in this case to marital communi-
cations occurring before October 1, 2000, does not
violate the Ex Post Facto Clause of the United States
Constitution. Moreover, because the Ex Post Facto
Clause of the Michigan Constitution is "not inter-
preted more expansively than its federal counterpart,"
see *Attorney Gen v Pub Service Comm*, 249 Mich
App 424, 434; 642 NW2d 691 (2002), the retroactive
application of the amendment does not violate the Ex
Post Facto Clause of the Michigan Constitution. The
amended statute only renders witnesses competent to
testify, if they choose, or permits the admission of
evidence that previously was inadmissible. It does not
make criminal any prior act not criminal when done;
it does not increase the degree, severity, or nature of
any crime committed before its passage; it does not
increase punishment for anything done before its
adoption; and it does not lessen the amount or quan-
tum of evidence necessary to obtain a conviction
when the crime was committed. See *Hopt, supra* at
589. It does not fall within Justice Chase's fourth cate-
gory[6] of an ex post facto law that "alters the legal

---

[6] The circuit court made a reference to a statement by Justice Chase
supposedly illustrating his fourth category. The trial court noted, "It also
appears to this court that an additional argument exists which compels
the same result. Mr. Justice Chase specifically identified the spousal privi-
lege as falling within the class of laws which constitute a violation of the
ex post facto clause." The court was referring to a portion of *Calder*,
*supra* at 389, in which Justice Chase noted that the prohibition against ex
post facto laws was initiated, in part, because the British Parliament in
the past had unfairly "violated the rules of evidence (to supply a defi-

rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence [sic], in order to convict the offender," *Calder, supra* at 390, because it does not modify the evidence necessary to obtain a conviction. *Carmell, supra* at 551-552.

The Michigan Supreme Court directed us to address "the ex post facto issue presented in this case in light of *Carmell* . . . ." *Dolph-Hostetter, supra,* 466 Mich 883. At this point, we have fully complied with this directive. Nevertheless, in order to avoid the possibility of further remand, we will briefly address several additional points.

First, we note that case law from certain other states supports our ex post facto analysis. In *State v Bragan*, 920 SW2d 227, 241 (Tenn App, 1995), the court addressed an issue materially analogous to that addressed by us today. The court reviewed several United States Supreme Court opinions, including *Hopt* and *Thompson,* and found no constitutional violation. *Id.* The court opined:

> [I]t is clear that laws which change rules of procedure but which do not affect any substantial right of a defendant

---

ciency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit . . . ." Justice Chase cited, in a footnote, the case of Sir John Fenwick in 1696. At the time of Sir John Fenwick, marital privilege as we know it did not exist; instead, at common law an accused was disqualified from being a witness on his own behalf because of interest, and his spouse was also disqualified as a witness because of the doctrine that a husband and wife were one person. See *Trammel v United States*, 445 US 40, 43-44; 100 S Ct 906; 63 L Ed 2d 186 (1980). Justice Chase's ancient statement thus related to a different situation and, aside from its nature as dictum, does not serve as a basis for overcoming the clear legal implications of *Carmell.*

> are not *ex post facto* laws. The . . . rule establishing that
> only a witness spouse may invoke the spousal privilege in a
> criminal proceeding is a procedural rule that did not affect
> any substantial rights of the appellant. It did not take away
> an available defense. Nor did it change the elements of the
> offense or the ultimate facts necessary to establish guilt.
> Therefore, . . . to allow the appellant's former wife to testify
> against him over his objection did not constitute a violation
> of the constitutional prohibition against *ex post facto* laws.
> [*Id.*]

Texas reached a similar conclusion. See *Freeman v State*, 786 SW2d 56, 57-58 (Tex App, 1990), and *Medrano v State*, 768 SW2d 502 (Tex App, 1989). The *Freeman* court reasoned that a procedural change in the rules of evidence did not allow less or different testimony in order to convict than the law required before adoption of the rules and only expanded the class of witnesses eligible to testify. *Freeman, supra* at 58.

Thus, out-of-state case law bolsters our conclusion that *Carmell* does not bar Hostetter from testifying at defendant's trial about his marital communications with her.

We next address defendant's argument that the amended marital-communications privilege cannot operate retrospectively because the Legislature did not expressly indicate that it be given retrospective effect. Defendant admits in her appellate brief that "[t]he language of the statute is most instructive of the legislative intent." By its plain language, 2000 PA 182, adopted and approved on June 20, 2000, became effective on October 1, 2000. At court proceedings on or after that date, the amended statute controlled the admissibility of marital communications. Accordingly, the prosecutor's interpretation of the amendment is

consistent with the Legislature's plainly expressed intent.[7] See, generally, *Washington v Clevenger*, 69 Wash 2d 136, 143; 417 P2d 626 (1966) (emphasizing that a marital privilege is invoked only "when the testimony of the spouse is offered at a trial or hearing" and not, for example, when the marital communication occurs).

Finally, we summarily reject defendant's unsupported contention that dismissal of the charges against her is appropriate because of the "delaying tactics" of the prosecutor. The prosecutor did nothing more than pursue a legitimate and ultimately meritorious legal strategy.

Reversed and remanded for trial. We do not retain jurisdiction.

---

[7] Moreover, as noted in *Tobin v Providence Hosp*, 244 Mich App 626, 661; 624 NW2d 548 (2001), "simply because a statute relates to an antecedent event, it is not necessarily regarded as operating retrospectively." A retrospective law " 'is one which takes away or impairs vested rights . . . or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past.' " *Id.*, quoting *Karl v Bryant Air Conditioning Co*, 416 Mich 558, 570; 331 NW2d 456 (1982) (citations omitted). As noted in *Maki v Mohawk Mining Co*, 176 Mich 497, 503; 142 NW 780 (1913), "[n]o one has a vested right in a rule of evidence." We conclude that the statutory amendment here does not operate retrospectively under the rationale of *Tobin*, as it " 'only remove[s] existing restrictions upon the competency of [a] certain class[] of persons as witnesses, [and] relate[s] to modes of procedure only, in which no one can be said to have a vested right . . . .' " *Carmell, supra* at 543-544, quoting *Hopt, supra* at 590. The marital-communications privilege is invoked at the time of the pertinent court proceedings and thus is not "vested" at an earlier date. See, generally, *Washington v Clevenger*, 69 Wash 2d 136, 143; 417 P2d 626 (1966). We express no opinion regarding whether a change in other privileges—for example, the physician-patient privilege—would be treated similarly by this Court.