F. W. KAVANAUGH MANUFACTURING CO. *v.* ROSEN.

1. SALE OF GOODS—CREDIT—FINANCIAL REPORTS.

A purchaser of goods, who has secured a term of credit, cannot be made to anticipate the payments because the seller has obtained a commercial agency report of the purchaser which is not satisfactory.

2. SAME—BREACH OF CONTRACT.

A manufacturer who, after accepting an order for goods and shipping a portion of them, obtains a commercial agency report of the purchaser which is unsatisfactory, and refuses to fulfill his contract, is liable to the purchaser for damages.

3. SAME—DAMAGES.

The measure of damages for failure to deliver goods sold, where they can be obtained in the open market, is the additional cost of the goods; where they cannot be obtained in the market, the purchaser is entitled to recover the profits lost through the fault of the seller.

Error to Wayne; Donovan, J. Submitted October 15, 1902. (Docket No. 65.). Decided December 29, 1902.

*Assumpsit* by the F. W. Kavanaugh Manufacturing Company against Aaron D. Rosen, Louis Rosen, and Myer S. Fink, copartners as A. D. Rosen & Company, for goods sold and delivered. From a judgment for plaintiff, defendants bring error. Reversed.

*Anderson & Rackham*, for appellants.

*Ira A. Lieghley*, for appellee.

MONTGOMERY, J.    On the 8th of February, 1899, the plaintiff's agent called upon defendants, A. D. Rosen & Co., at Detroit, and defendants gave an order to plaintiff for 600 dozen of Gem underwear, assorted sizes, for the price of 75 cents per dozen for size 16, with a rise of 25 cents per dozen for each larger size, and a trade discount of 15 per cent.; same to be shipped June 1st on the following terms: Net 10, October 31st. This order was forwarded to the plaintiff and entered upon its books at the home factory, in Cohoes, N. Y. Two shipments were made, aggregating 174 dozen, and this action is brought to recover the purchase price of these goods shipped. The case originated in justice's court, and the defendants gave notice of recoupment, and claimed damages for a breach of contract on the part of plaintiff, for failure to deliver the balance of the goods. On the trial at the circuit, plaintiff recovered the full value of the merchandise shipped, and defendants were defeated of any recoupment.

It will be noted that, upon the face of the contract, it appeared that payment was not due until 10 days after October 31st, or November 10th. On the 11th of September, plaintiff wrote defendants:

" If you will send us your check for goods delivered to you on your order, it will assist us greatly, as we are in need of cash, and goods are sold very close, so that we cannot afford to carry accounts to maturity. In fact, we sell all our goods with the understanding that bills will be anticipated by our customers. If you will help us out, we will try and send your goods promptly."

To this defendants replied as follows:

"We are in receipt of your favor of 9/11/1899, and was quite surprised to note contents. We suppose you are aware that our order calls for 600 doz. Gem vests, p., and dr. Up to date you have only shipped us about 184 doz. There is still coming to us 416 doz., which should have been shipped nearly three months ago. We will make you a proposition, since you want the money badly. Ship us 300 doz. more Gems, and we agree the same day we check the goods off to send you our check in full up to date, less anticipation."

It appears that no immediate response was made to this letter, but on the 9th of October defendants again wrote plaintiff, notifying it that, unless supplied with the underwear, they would be compelled to go into the open market and buy them, and charge plaintiff with the difference. Plaintiff replied, saying that it had some time before asked for a check in settlement for goods already delivered, and added that:

"Our request was made on account of reports we received from a commercial agency to which we are subscribers, said reports being far from favorable to you or satisfactory to us; and we know of no law that will compel delivery of goods to customers whose financial standing is not satisfactory to the seller. Your refusal to pay for the goods already delivered certainly did not justify us in shipping you more goods, and rather indorsed the report which we had received. When our account matures, we certainly will use all means in our power to collect the same in full, as called for in our invoices."

To this defendants replied, expressing their surprise at the attitude taken by the plaintiff, and offering, if it would ship 300 dozen, to send check on the receipt of the goods. To this plaintiff replied that it would send goods on receipt of check for goods already shipped. To this defendants replied, in substance, that the bill was not yet due, but offering to receive the remaining 416 dozen underwear for spot cash, and authorizing shipment with draft attached to the bill of lading. This appears to have closed the correspondence.

On the trial the court charged the jury as follows:

"I charge you, as a matter of law, that if you find, as a matter of fact, that the plaintiff received a report from the commercial agency, which report gave defendants a rating that was not satisfactory— Now, the test is not whether it was actually true or not. The test is not whether they were actually poor or not. The test is, did the seller in good faith honestly believe that they were in danger? and, if they believed it, they had a right to act upon it. That is the test. To reread a little,—that was not satisfactory to the plaintiff, and that plaintiff notified defendants of the fact, and offered to send the remainder of the goods if the defendant would pay for those already shipped, and the plaintiff relied upon the report, I will say in good faith, and the defendants refused then to pay for the goods already delivered to the defendants, and that the bills were to be anticipated, then and in that case you will allow no damages for the nondelivery, but would render a verdict for the plaintiff for the value of the goods delivered under the contract, with the interest thereon. * * *

"Now, you will not need to rely entirely on one person, for there are quite a number here. You will not need to say Rosen & Co. are actually insolvent. Some firms are entirely solvent, and slow-like. If the report was a true report, like in regard to their ability to pay, that is not the question for you to determine. We are not to pass upon their solvency. It is what they believed,—just like a man in self-defense strikes over a man, even in no danger. We are not to judge of it; it is what he believed to be the danger. And if they were in danger, even if they had sent the goods on,—even if they lay here in the station house, —if they were in danger they could order them back; they could stop them by telegram and say, 'Bring them back to us,' because the law protects a man if he is in danger; you can bring back your goods."

In the first part of this charge, it appears, the circuit judge made the defendants' right to recoup to depend on whether the plaintiff had acted in good faith upon the report made to it by the commercial agency, and whether there had been an effort made to anticipate the payments for which the contract provides. There was no evidence

of such an agreement to anticipate payments. The correspondence clearly shows that a term of credit was extended to the defendants by the terms of the order itself, and the defendants were in no way in default for refusing to pay until the termination of that term.

The other proposition embodied in this charge is still more startling. The rule of law amounts to this: That if A. and B. make a contract, and B. afterwards meets C. upon the street, and C. says to B., "A. intends to beat you in that contract," this would excuse B. from performance. We have made some investigation, and have found no authority to sustain such proposition. It was open to the plaintiff to investigate the financial condition of defendants before making the contract. Failing to do this, nothing short of a breach of contract upon defendants' part, or actual insolvency, would excuse the plaintiff from fulfilling the contract on its part. Any other rule would leave a purchaser at the mercy of the seller, and could not afford a safe rule for the transaction of business.

As to the question of damages, there was testimony tending to show an advance in price of the identical goods in question by the plaintiff itself. There was also testimony tending to show that, when this contract was finally broken, defendants were unable to procure the goods in the open market; that they had contracted a large quantity of these goods at an advance of something over $1 per dozen, and were unable to fulfill their contract. The rule of damages in case they were able to procure the goods in the open market would be the additional cost to them; but, if the goods were not obtainable, defendants would be entitled to recover the profits lost through the fault of plaintiff. *Den Bleyker* v. *Gaston*, 97 Mich. 354 (56 N. W. 763).

The judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred.