DAVIS v. KOPPERS COMPANY, INC.

1. CONTRACTS—EVIDENCE OF EXISTENCE—DIRECTED VERDICT.
    Motion for directed verdict at close of plaintiffs' proofs because no contract had then been proved was properly denied, where it had been shown by exhibits and testimony that there was an offer and an acceptance thereof.

2. PLEADING—AMENDMENT.
    Amendment of plaintiffs' declaration in accordance with proofs received without objection was properly allowed by trial court as within its discretion after rendition of verdict and judgment and before determination on defendant's motion for judgment *non obstante veredicto* or for a new trial as the case was still pending, the amendment did not affect the substantial rights of the parties and was in furtherance of justice (CL 1948, § 616.1; Court Rule No 19, § 4 [1945]).

3. SALES—BREACH OF CONTRACT—SUBSEQUENT INABILITY TO MAKE DELIVERY.
    Whether defendant, seller of scrap to scrap-metal dealer, would *later* have been unable to make delivery is not a defense to action for its breach of its contract to sell all the scrap, including the rails, *then* on the premises which it had offered to sell and plaintiffs' bid was made and accepted on such basis.

REFERENCES FOR POINTS IN HEADNOTES
[5–7, 11]  46 Am Jur, Sales § 676 *et seq.*

4. APPEAL AND ERROR — VERDICT — EVIDENCE — CURRENT MARKET PRICES—JOURNALS.

Verdict in action for breach of defendant's contract to sell scrap metal, based in part on quotations as to current market price taken from a recognized journal authority quoting current market prices and other proofs *held*, not against the great weight of the evidence.

5. DAMAGES—EVIDENCE—MARKET PRICE.

Claim that plaintiff scrap-metal dealers could not have sold at market prices prevailing at time defendant breached its contract to sell scrap to plaintiffs *held*, untenable, where plaintiffs had previously listed the scrap and had offers from others to buy most of it before making bid therefor from defendant, hence verdict, as reduced to $20,000 was not excessive.

6. SAME—VALUE OF SCRAP METAL—EVIDENCE.

Jury's verdict as to value of scrap metal which defendant had contracted to sell to plaintiff dealers which latter intended to keep, or sell without scrapping *held*, not contrary to the great weight of the evidence in action for defendant's breach of its contract, hence verdict, as reduced by remittitur to $20,000, was not excessive.

7. SAME—MITIGATION—EVIDENCE.

Claim that plaintiff scrap-metal dealers should have mitigated their damages resulting from defendant's breach of contract to sell them a quantity of scrap metal *held*, untenable, where there was a dearth of proof that plaintiffs could have done so by acquiring similar scrap elsewhere.

8. APPEAL AND ERROR—VERDICT—GREAT WEIGHT OF EVIDENCE.

Verdict of jury for defendant's breach of its contract to sell scrap to plaintiff scrap-metal dealers, as reduced by remittitur to $20,000, *held*, not contrary to great weight of evidence, where there was testimony tending to support the various items making up plaintiffs' loss, the credibility and probative value of which were for the jury.

9. SAME—SPECIAL QUESTIONS.

The Supreme Court need not speculate on what specific findings of fact might have been made by the jury, where there was no request for special findings by the jury.

10. SALES—BREACH OF CONTRACT—INSTRUCTIONS—DAMAGES.

Charge to jury in action for defendant's breach of its contract to sell scrap metal to plaintiff scrap-metal dealers, when

taken in its entirety, *held,* proper, where the court referred to plaintiffs' evidence as to many items of scrap, the prices they might have obtained and the loss claimed to have been sustained and the charge conformed to the uniform sales act as to measure of damages for seller's· breach of contract (CL 1948, § 440.67).

11. SAME—FAILURE TO PERFORM—DAMAGES—MARKET.
    The measure of damages for failure to deliver goods sold, where they can be obtained in the open market, is the additional cost of the goods; where they cannot be obtained in the market, the purchaser is entitled to recover the ·profits lost through the fault of the seller (CL 1948, § 440.67).

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted June 11, 1952. (Docket· No. 4, ·Calendar No. 45,289.) Decided October 6, 1952.

Action by Loyd Davis and John Borgman against Koppers Company, Inc., a foreign corporation, to recover damages for breach of contract to sell scrap metal. Verdict and judgment for plaintiffs. Remittitur filed by plaintiffs. Defendant appeals. Affirmed.

*Reber & Reber,* for plaintiffs.

*Joseph F. Deeb* and *Earl Waring Dunn (John M. Crimmins,* of counsel), for defendant.

BOYLES, J. Plaintiffs, residing in Fremont, Newaygo county, are dealers in scrap metal. During the summer of 1948 the defendant was planning to dismantle its· wood-preserving plant in Reed City, Osceola· county. Plaintiffs went to Reed City and ·learned that the defendant would have· considerable scrap iron for sale. Plaintiffs were advised by defendant that the scrap would be offered for bids and that the highest written bid would be. accepted. Early ·in· November plaintiffs got a typewritten list of the

scrap which the defendant planned to sell, and on November 29th submitted to defendant a bid in writing, the essential part of which is as follows:

"We submit the following bid for consideration as follows. $38 per net ton on trucks or/and $35 per net ton on cars for all scrap iron exclusive of tin located at the Reed City plant, Reed City, Michigan, as is and where is. Scrap to be taken up and loaded by us."

On December 27th plaintiffs received from the defendant an acceptance of their bid, dated December 23d, from which we quote:

"This is to advise that your bid on the scrap at Reed City has been accepted."

On December 28th plaintiffs received a telegram from defendant's superintendent G. R. Killinger at Reed City as follows:

"We are advised by Pittsburgh office your bid too low. Therefore not accepted."

Later on the same day plaintiffs went to Reed City, failed to find the superintendent, and on December 31st sent a telegram to defendant's home office at Pittsburgh as follows:

"In reply to your letter 12–23–48 re acceptance our bid on scrap at Reed City plant, will move our crew in immediately as per terms of bid."

Plaintiffs then went to Reed City preparatory to taking a crew in to load scrap, and found a crew from another purchaser to whom defendant had sold the scrap on December 31st. The crew was taking the scrap out. Plaintiffs then brought the present suit against the defendant for damages for breach of contract. Issue was joined, trial by jury followed, and plaintiffs had verdict and judgment for $23,689. Later, the court in denying defendant's motion for

judgment *non obstante veredicto* or in the alternative for a new trial held that a verdict in excess of $20,000 would be contrary to the great weight of the evidence, and that the court would grant a new trial unless plaintiffs consented to a reduction of the judgment to that amount. Plaintiffs filed a remittitur accordingly, whereupon the court entered an order denying a new trial. The defendant appeals from the judgment as entered, and also from the order which denied the defendant a new trial upon the filing of the remittitur.

The defendant-appellant does not now deny the existence of the contract between the parties, nor the breach. But appellant argues that the trial court should have granted its motion at the close of plaintiffs' proofs, to direct a verdict for the defendant on the ground that no contract had been proven at that time. The court properly denied the motion on the ground that there had been an offer and acceptance shown by plaintiffs' exhibits and testimony received without objection, and that a binding contract between the parties had been shown. The court subsequently charged the jury to the same effect and appellant does not now complain of that ruling.

The principal claim of the defendant, on which it mainly relies for reversal, is that the verdict of the jury was excessive even after the court had reduced the judgment to $20,000 when plaintiffs consented to the remittitur. On that ground, namely, that the verdict is excessive, the defendant now contends that it is contrary to the great weight of the evidence. Inseparably connected with that claim is defendant's further contention that the trial court erred in charging the jury as to the theory on which plaintiffs might recover damages, and with respect to the measure of damages applicable to the case.

At the outset, defendant claims that the trial court erred in allowing plaintiffs to amend their

declaration after verdict to conform to the proofs, and in having submitted the case to the jury on the theory there alleged. In their declaration by which suit was commenced, the plaintiffs' grounds for claiming damages were stated as follows:

"That notwithstanding plaintiffs' refusal to acquiesce in, and to accept, said attempted repudiation of contract upon the part of the defendant, and plaintiffs' notification to defendant that plaintiffs had resold said scrap to others at a substantial profit, and would sustain great loss and damage by defendant's breach of contract, defendant persisted and continued in such breach and repudiation of contract, and sold said scrap to others.

"That prior to said wrongful breach and repudiation of contract by the defendant, plaintiffs entered into a contract whereby they were to resell said scrap to a financially responsible purchaser, at a price of $60 per gross ton loaded on cars at the shipping point, or, at the option of plaintiffs, at a price of $52 per net ton loaded on cars at shipping point, either of which options would have yielded plaintiffs a large profit had the defendant not repudiated and breached said contract; that said scrap, as the defendant well knew, was of special quality that was not obtainable elsewhere on the open market at a price less than that for which plaintiffs had contracted to resell said scrap."

The verdict had been rendered and judgment entered November 2, 1950. On January 8, 1951, the defendant filed the motion for judgment *non obstante veredicto* or in the alternative for a new trial, hereinbefore referred to. While this motion was pending, the court granted plaintiffs leave to amend their declaration and entered an order as follows:

"In accordance with the request made by counsel for plaintiffs to amend the declaration filed in said cause, in accordance with the provisions of CL 1948,

§ 616.3 (§ 27.840)* permission is hereby granted to the plaintiff to make such amendments forthwith to the declaration on file in said cause in accordance with the proofs received upon the trial, which were received without objection by defense counsel. Said amendments should be made forthwith in order that there may be no unnecessary delay in passing upon the motions pending before this court.

"EARL C. PUGSLEY,
"Circuit Judge."

It should be noted that the court limited the scope of the amendment to accord with the proofs received upon the trial which were received without objection. Thereupon plaintiffs filed an amended declaration, adding a paragraph setting up in detail the grounds on which plaintiffs relied for claiming damages for breach of contract. The main issue in the present controversy centers upon what grounds plaintiffs may depend for damages, and for the extent of damages which they may be allowed to recover. On that question, appellant argues that the verdict is excessive because of being contrary to the great weight of the evidence. Hence, the amendment becomes important in considering that question. It reads as follows:

"Plaintiffs represent that prior to the execution of said contract for the sale of scrap iron to the plaintiffs, and prior to said breach and repudiation of said contract by the defendant, the defendant was informed, well knew, and had full knowledge, that the plaintiffs were dealers in scrap iron and metal and were engaged in the business of buying and selling the same, and that plaintiffs intended and expected to take up and prepare said scrap iron and to sell the same and to realize a profit thereon, and that plaintiffs were purchasing said scrap iron for those purposes; that at the time of said breach

---

* See CL 1948, § 616.1 (Stat Ann § 27.838).

and repudiation of said contract by the defendant, the defendant well knew that the plaintiffs were thereby deprived of great gains and profits thereon; that the plaintiffs were by said breach and repudiation of said contract defeated and deprived of great gains and profits that would otherwise have accrued to them from the delivery of said scrap iron pursuant to said contract.

"Plaintiffs further represent that upon said breach and repudiation of said contract by the defendant, the defendant sold the said scrap iron to another scrap-iron dealer engaged in the same business as the plaintiffs, and that thereafter there was no open market in which scrap iron similarly situated and of the same or similar kind, quality, quantity, and condition, could be obtained by the plaintiffs to restore them to the position they would have been in, had the defendant not breached said contract; at the time of said breach and thereafter there were available to the plaintiffs ready markets and purchasers of such scrap iron, in the assorted lots, kind, qualities and quantities, that the plaintiffs were prepared and able to furnish therefrom, to render the same marketable in such markets and acceptable to such purchasers, at prices that would have enabled the plaintiffs to realize large gains and profits therefrom, had the defendant not breached said contract; that in consequence of such breach, plaintiffs were deprived of such large gains and profits; all of which was known to the defendant at the time of said breach.

"Plaintiffs further represent that in consequence of the wrongful breach of said contract by the defendant, plaintiffs were deprived of and lost large gains and profits represented by the difference between such contract price, plus the reasonable cost of preparing said scrap iron for and shipping the same to, the purchasers thereof that were available to the plaintiffs in the scrap iron markets, and the price such purchasers would have paid the plain-

tiffs therefor; said gains and profits amounting to the sum of $25,000 and upwards."

The defendant moved to strike the amended delaration for the following reason:

"On the ground that the allegations contained therein set forth a new cause of action and a new theory of recovery, which are not fairly within the meaning of the applicable Michigan statute relating to the correction of defects or imperfections in matter of form.   *   *   *   If any amendment to the declaration is to be permitted, it should be confined to the allegation that the defendant was informed that the plaintiffs were dealers in scrap iron and metal.   The additional allegations to which this motion is directed are unsupported by the record and should not in any event be allowed in the amended declaration."

CL 1948, § 616.3 (Stat Ann § 27.840), referred to in the court's order granting leave to amend, applies to amendments to pleadings, after judgment, to rectify any defect or imperfection in matter of form. Appellant claims that the amendment went beyond the correction of defects or imperfections in matter of form.   However, the court and counsel apparently overlooked the provisions of CL 1948, § 616.1 (Stat Ann § 27.838),* a part of our statute of amendments in the judicature act, which reads as follows:

"The court in which any action or proceedings shall be pending, shall have power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment or decree rendered therein.   The court at every stage of the action or proceedings shall disregard any error or defect in

* See CL 1915, § 12478.

the proceedings, which do [does] not affect the substantial rights of the parties."

The instant proceeding was still pending in the trial court at the time the amendment was allowed, on defendant's motion for judgment *non obstante veredicto* or for a new trial. The judgment was not reduced to $20,000 until later, when the order was entered denying defendant's motion for a new trial. We have examined the record and find that the amendment conforms to the proofs adduced during the trial, and was not contrary to the general allegations in the declaration. It was within the discretion of the trial court to amend the declaration in substance, inasmuch as the amendment did not affect the substantial rights of the parties, and was in the furtherance of justice. Under the power granted by said CL 1948, § 616.1, the trial court did not abuse its discretionary power in allowing the amendment. If any additional reason, aside from the statute of amendments, were needed to establish the authority of the trial court to allow said amendment, it may be found in Court Rule No 19, § 4 (1945), which declares:

"If, after a verdict or judgment, it appears in any action that a different cause of action has been proved and should have been pleaded, a new count setting up the cause of action so proved may by leave of court be added to the declaration by amendment, and the verdict and judgment shall stand."

The verdict rendered by the jury, $23,689, was approximately $3,000 less than the amount of damages which plaintiffs claim was shown by their testimony and exhibits. In reducing the verdict to $20,000 (effective after plaintiffs consented to the remittitur), the trial court concluded that the most important matter to be considered on the motion for a new trial was the amount of the verdict, and in

a lengthy opinion in which the various claims of both parties were discussed and considered in detail, concluded that certain items, amounting to $3,689, should not have been allowed by the jury. The verdict was reduced accordingly.

Defendant's argument on which it principally bases its claim for reversal is stated in its brief as follows:

"The verdict of the jury was excessive and against the great and overwhelming weight of the evidence."

Counsel for appellant divide said argument as follows:

1. & 2. That plaintiffs would not have received the quantity or quality of rails claimed.

As to that, the defendant offered to sell all the scrap, including the rails, then on the premises; plaintiffs accepted, and bid on that basis. Whether the defendant would later have been unable to make delivery is not a defense.

3. That the jury's finding based on quotations as to current market price, taken from a recognized journal authority quoting current market prices, was against the great weight of the evidence.

The verdict was also based on other proofs, as to price, and apparently the testimony of one of defendant's witnesses to the contrary was not given credence by the jury.

4. That plaintiffs could not have sold at the market prices prevailing on the date the contract was breached.

To the contrary, plaintiffs' testimony showed that during their frequent visits to defendant's plant and their listing of the scrap during the summer before their bid was made, they had offers to buy most of the scrap, at prevailing market prices, or more.

5. That the jury's findings as to the value of scrap which plaintiffs intended to keep, or to sell without scrapping, was contrary to the great weight.

There was testimony to support such a conclusion. Its credibility was for the jury.

6. That plaintiffs should have mitigated their damages.

There was a dearth of proof that plaintiffs could have done so by acquiring similar scrap (particularly rails) elsewhere.

7. That the finding of the jury that plaintiffs had proven their damages to a reasonable certainty was against the great weight.

In the absence of special questions submitted to the jury or a request for special findings, we need not speculate on what specific findings of fact might have been made by the jurors. The broad question is whether the verdict, as reduced, is still contrary to the great weight. Plaintiff Loyd Davis, with 25 years' experience as a scrap dealer, inspected defendant's plant many times during the summer of 1948 and made computations of the amount of scrap there and its kinds, before making the bid. His testimony, if given credence by the jury, would amply support the verdict. Plaintiffs' exhibit 5 showing the scrap defendant was offering for sale, and plaintiffs' exhibit 6 showing the market price actually paid for such items of scrap at the time the defendant repudiated the contract, tend to establish plaintiffs' claims for damages. A tabulation of plaintiffs' proofs as to the scrap offered for bids by the defendant, the actual market prices which plaintiffs could obtain by resale, at the time and place it was offered by the defendant, the cost of removal, preparation and transportation, shipping cost and net profit to plaintiffs, is supported by the testimony of plaintiffs' witnesses.

A detailed review of the testimony and exhibits shown in this record of over 250 pages would overburden this opinion without any compensating value to the law. The credibility and probative value from which to determine the facts was for the jury. Errors complained of by the appellant may be cured by a remittitur, if and when accepted by plaintiffs. *Von Essen* v. *Vos,* 333 Mich 644.

The verdict and judgment as reduced by the remittitur is not contrary to the great weight of the evidence.

Finally, appellant claims that the court erred in charging the jury. In instructing the jury, the court referred to plaintiffs' evidence as to many items of scrap and the prices they might have obtained; and as to the loss claimed to have been sustained by them by defendant's breach of contract to sell. When the charge is considered in its entirety, the jury was properly instructed as to the elements to be considered and the measure of damages to be applied. The charge follows the uniform sales act (CL 1948, § 440.67 [Stat Ann § 19.307]), which provides:

"(1) Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery.

"(2) The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

The charge also conforms to *Talcott* v. *Freedman,* 149 Mich 577, where the Court, quoting from *F. W. Kavanaugh Manfg. Co.* v. *Rosen,* 132 Mich 44 (102 Am St Rep 378), said:

"The rule of damages in case they were able to procure the goods in the open market would be the additional cost to them; but, if the goods were not obtainable, defendants would be entitled to recover the profits lost through the fault of plaintiff. Citing *Den Bleyker* v. *Gaston,* 97 Mich 354."

To the same effect, see *Thorn* v. *Morgan & Whateley Co.,* 135 Mich 51.

In *Flores* v. *Basso,* 229 Mich 577, 579, the Court said:

"The measure of damages for failure to deliver in such cases is the difference between the contract and market price, if there be a market price. If the goods cannot be obtained in the market, then the measure of damages is the damage which naturally and directly flows from the breach thereof. Uniform sales act (CL 1915, § 11898, subdivision 2).

"In a similar case this Court said:

" 'The measure of damages for failure to deliver goods sold, where they can be obtained in the open market, is the additional cost of the goods; where they cannot be obtained in the market, the purchaser is entitled to recover the profits lost through the fault of the seller.' *F. W. Kavanaugh Manfg. Co.* v. *Rosen* [syllabus], 132 Mich 44 (102 Am St Rep 378)."

Under the proofs adduced in this case, the charge was appropriate and proper.

Affirmed.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.