[No. 38326.    Department One.    August 11, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. WAYNE L. CLEVENGER, *Appellant.*\*

\*Reported in 417 P.2d 626.

*Efrem Z. Agranoff,* for appellant (Appointed counsel for appeal).

*Robert E. Schillberg* and *Mark T. Patterson,* for respondent.

TURNER, J.†—Appellant was charged by information in two counts with the crimes of incest and indecent liberties, both committed on his 3-year-old daughter. A jury found him guilty as charged. From a judgment and concurrent sentences of life and 20 years, he appeals, assigning eight errors, of which five require discussion.

The facts relating to the first and fifth assignments are these: On February 8, 1965, shortly after 5 p.m., appellant's wife went to a neighbor's house, leaving appellant at home alone with their three daughters. At that time, the children were unharmed. At about 8 p.m., appellant told his wife that "Dee-Dee," the 3-year-old, had been hurt, and asked

---

†Judge Turner is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

her to come home immediately. On arrival there, she found the child undressed and lying in a pool of blood in appellant's bed. The blood was coming from the child's vagina. There was no object present which could have caused such an injury, and there was nothing to suggest that any man other than appellant had been in the house. Appellant took the child to the hospital, where the family physician found a jagged tear of the vagina and adjacent tissues. In order to effect such a wound, the instrumentality must necessarily have been at least 5 inches long and 1½ to 2 inches in diameter.

Appellant, his wife and their other two children stayed that night at the home of appellant's father and stepmother, Mr. and Mrs. Benjamin. The next day (February 9th) appellant was arrested and questioned, and the officers learned that the clothing appellant had worn on the night of the crime had been left at his parents' house. On the 10th, the deputy sheriffs returned to the Benjamin home without a search warrant. They were admitted by Mrs. Benjamin and, with her assistance, located the clothing in question, a pair of jeans and a T-shirt, which was obviously stained. The officers took these items without objection. Laboratory tests disclosed that on the inside of the trousers in the area of the left front pocket there were stains of seminal fluid and blood of the same grouping as that of the injured child.

Appellant told the doctor at the hospital that the child's bleeding was the result of his actions, and he later admitted to the officers that he "must have done it."

Appellant moved to suppress the clothing items on the ground that the officers had obtained them by a search of a private dwelling house without the authority of a search warrant, not incident to an arrest, and without the consent of the occupier of the premises. The denial of this motion, and the subsequent admission of the clothing into evidence forms the basis of appellant's first assignment of error.

■ Appellant had no proprietary or possessory interest in the Benjamin premises. The consent of the owner of the premises made the search lawful, and dispensed with the

necessity for a search warrant. *Maxwell v. Stephens,* 348 F.2d 325 (8th Cir. 1965); *State v. Kinderman,* 271 Minn. 405, 136 N.W.2d 577 (1965); *Cutting v. United States,* 169 F.2d 951 (9th Cir. 1948); *Woodard v. United States,* 254 F.2d 312 (D.C.Cir. 1958); *cert. denied* 357 U.S. 930, 2 L. Ed. 2d 1372, 78 Sup. Ct. 1375.

Appellant's claim that no proper foundation was laid for the admission of the clothing in evidence has no merit. There was substantial evidence accounting for the custody and condition of this clothing from the time appellant left it at the Benjamin home until it was offered in evidence.

■ Under the fifth assignment of error, appellant contends that the evidence was insufficient to establish the corpus delicti, and that his motion to dismiss should have been granted. The corpus delicti of incest consists of (1) an act of sexual intercourse (2) between male and female persons within the prohibited degrees of relationship to each other.

The argument is that there was no direct testimony concerning the nature of the instrumentality that caused the injuries to appellant's daughter. Inherent in the challenge is the point that even if the evidence shows commission of the first element by someone, it must go further and establish the prohibited degree of relationship in order to satisfy the second.

■ The rule is that a confession is not sufficient to establish the corpus delicti, but if there is independent proof thereof, the corpus delicti may be established by a combination of the independent proof and the confession. The circumstantial evidence summarized above is clearly sufficient independent proof of both elements of the crime to warrant consideration of appellant's admission that he was responsible. *State v. Meyer,* 37 Wn.2d 759, 226 P.2d 204, and cases cited; Annotation, 40 A.L.R. 460, *Necessity and character of corroboration of confession of sexual offense.*

Under the second assignment, appellant alleges error in allowing appellant's wife to testify in violation of the privilege granted by RCW 5.60.060(1). As of the date of the crime, this statute read:

The following persons shall not be examined as witnesses:

(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other.

The trial court permitted the wife's testimony pursuant to Laws of 1965, ch. 13, § 7, which amended RCW 5.60.060 (1) so as to remove the privilege in a criminal prosecution of this nature. Appellant contends (1) that the 1965 statute, if construed to apply to the crime charged here, is ex post facto and unconstitutional as to him; and (2) that it should be construed to apply only to prosecutions for crimes committed after its effective date.

Laws of 1965, ch. 13, §§ 1, 7, and 8 read as follows:

Section 1. In order to protect children whose health and welfare may be adversely affected through the infliction, by other than accidental means, of physical injury and/or physical neglect, or sexual abuse, requiring the attention of a practitioner of the healing arts, the Washington state legislature hereby provides for the reporting of such cases by such practitioners to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard and enhance the general welfare of such children.

Section 7. Section 392, Code of 1881, and RCW 5.60.060 are each amended to read as follows:

(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal

action or proceeding for a crime committed by one against the other, *nor to a criminal action or proceeding for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian.* (Italics ours.)

. . . .

Section 8. This act is necessary for the immediate preservation of the public peace, health and safety, the support of the state government and its existing public institutions, and shall take effect immediately.

Laws of 1965, chapter 13, took effect March 19, 1965. Before its effective date, the crime had been committed and the original information herein filed. After the effective date, an amended information was filed on which the trial was held from May 10 to 13, 1965.

Appellant accepts the definition of ex post facto laws as stated in *Calder v. Bull,* 3 U. S. (3 Dall.) 386, 390, 1 L. Ed. 648:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Appellant contends that the 1965 amendment of RCW 5.60.060, if applied to this case, runs afoul of the fourth category of the above definition.

The argument of appellant is completely answered by the language of the court in *Hopt v. Utah,* 110 U.S. 574, 28 L. Ed. 262, 4 Sup. Ct. 202. The court was there considering a similar claim with respect to a statute making the testimony of ex-convicts competent, passed subsequently to the murder with which defendant was charged, but before the trial. The court said, at 589:

The crime for which the present defendant was indicted,

the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged.

See, also, *Wester v. State,* 142 Ala. 56, 38 So. 1010 (statute making wife's testimony competent); *Mrous v. State,* 31 Tex. Crim. 597, 21 S.W. 764; *Underwood v. State,* 111 Tex. Crim. 124, 12 S.W.2d 206, 63 A.L.R. 978.

Appellant has cited no case to the contrary, and we are aware of none.

Appellant relies on certain language in *State v. Swan,* 25 Wn.2d 319, 171 P.2d 222, and *State v. Tanner,* 54 Wn.2d 535, 341 P.2d 869, in which the protection given by the marital privilege was likened to the privilege against self-incrimination guaranteed by Const. art. 1, § 9. The language relied on was obviously designed to emphasize the importance of the statutory privilege as it then existed and as it applied to the facts in those cases. Neither of these cases held that the statute created a vested right which could not be withdrawn in subsequent trials.

Appellant further argues that to apply the 1965 Act to this case would be to give it a retrospective meaning. Appellant would construe the amendatory language as though it read "nor to a criminal action or proceeding

*hereafter instituted* for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian." (Italics ours.) Had that been the legislature's intention, it would have been easy to declare it. However, the object on which this statute operates is the marital privilege. In actual practice, the privilege is not asserted at the time the action is filed but only when the testimony of the spouse is offered at a trial or hearing. Consequently, the fair meaning of the statute is that it shall apply in trials or hearings which are held after the effective date of the act. So construed, it operates prospectively, and applies to the trial of this case, which commenced over 7 weeks after the statute took effect.

Appellant alleges error in allowing the family physician to testify to appellant's statement to him at the hospital that he was responsible for the child's condition. Appellant claims the physician-patient privilege provided by RCW 5.60.060 (4). This claim is invalid for two reasons. The privilege belongs to the patient; here the child was the patient, not appellant. Furthermore, Laws of 1965, ch. 13, § 7, abolished the physician-patient privilege "in any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof."

Appellant assigns error on admitting his confessions in evidence on the ground that he had not been fully informed of his constitutional rights not to incriminate himself and to have counsel. The trial court conducted a hearing pursuant to Rule of Pleading, Practice and Procedure 101.20W and found the confessions admissible.

The evidence discloses that appellant was 27 years old at the time of the offense. He had previously served as a yeoman in the United States Navy where he reported courts martial in criminal cases and was familiar with the right to counsel and the privilege against self-incrimination accorded by military law. When interviewed by Captain Meyer of the sheriff's office on the day after the crime, he was advised that he did not have to make any statement, and that any statement he did make could be used against him in court. On the day following arrest, he was taken

before a justice of the peace, who advised him of his right not to make any statement and of his right to counsel. Thereafter, appellant was interviewed by a deputy prosecutor and a tape recording made, at the end of which appellant's constitiutional rights were again reviewed; the deputy prosecutor recited the advice previously given him, to which appellant responded, "I know that perfectly," and "I realize that." The record shows that appellant's constitutional rights were adequately protected, and that the right to the presence of counsel during interrogation was intelligently waived.

Assignments six, seven and eight refer to alleged errors of the trial court in giving unwarranted assistance to the prosecution, and in denying appellant's motions to dismiss and for a new trial. There is no merit in these assignments.

Appellant had a fair trial. Finding no error, the judgment is affirmed.

ROSELLINI, C. J., HILL, HUNTER, and HALE, JJ., concur.

*\*Reported in 417 P.2d 606.