[No. 12888–4–I.   Division One.   September 24, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK A. SLIDER, *Appellant*.

*Michael Frost* and *Jan P. Olson,* for appellant (ap–pointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *David H. Smith, Deputy,* for respondent.

SWANSON, J.—Frank A. Slider appeals his conviction of statutory rape in the first degree (RCW 9A.44.070), alleging that prejudicial hearsay evidence was erroneously admitted under the excited utterance exception (ER 803(a)(2)) and under the statutory child sexual abuse exception (RCW 9A.44.120). We affirm.

On the evening of May 19, 1979, Slider babysat Roberta's 2½–year–old child, Trina. When Roberta returned, she

noticed blood on the back of Trina's underwear and promptly replaced it with clean underwear. As Roberta left the room, Trina began "screaming and hollering" and kept fighting as Roberta picked her up in an attempt to mollify her. Shortly thereafter Trina fell asleep.

While trying to get Trina ready to go to day care on the following morning, Trina struggled to keep herself covered and, when finally uncovered, pointed to her vaginal area and said "Owee". Roberta then noticed more blood and, when cleaning Trina, noticed some swelling in that area. Roberta testified, over defense objection, that at that time she also asked Trina

> if Frank had done a no–no, and she said yes, and I said, "Did he touch you?" and she said, "Yes," and I said, "Did he use his finger?" and she said, "Yes, finger," and pointed to the vagina area.

Verbatim Report of Proceedings, at 118–19.

Dr. Turner, who examined Trina the day following the injury, testified that Trina had suffered a superficial laceration of her hymenal ring, which he believed was caused by the insertion of a sharp instrument. The trial court also admitted Slider's October 4, 1979 confession to having inserted the little finger of his right hand into Trina's vagina while babysitting her on the evening of May 19, 1979.

The first issue before us is whether Trina's statements fell within the "excited utterance" exception to the hearsay rule. ER 803(a)(2) describes an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Although this hearsay exception comports with previous Washington law, *Johnston v. Ohls,* 76 Wn.2d 398, 405, 457 P.2d 194 (1969); Comment, ER 803, it is not to be interpreted as restrictively as the common law exception. *State v. Dixon,* 37 Wn. App. 867, 684 P.2d 725 (1984).

> [N]evertheless, ER 803(a)(2) should be interpreted in a sufficiently restrictive manner as not to lose sight of the

basic elements which distinguish excited utterances from other hearsay statements. This is necessary in order to preserve the real purpose of the exception and prevent its application where the factors guaranteeing trustworthiness are not present.

*Dixon,* at 873.

The principal elements of the excited utterance exception are a startling event and a spontaneous declaration caused by that event.[1] In other words, the event must speak through the declarant.

The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.

*Johnston,* at 406.

Statements are not inadmissible solely due to the passage of time between the event and the declaration, *State v. Fleming,* 27 Wn. App. 952, 956, 621 P.2d 779 (1980); *State v. Downey,* 27 Wn. App. 857, 861, 620 P.2d 539 (1980), nor solely due to the fact that the declaration was made in response to a parent's questions. *Robbins v. Greene,* 43 Wn.2d 315, 321, 261 P.2d 83 (1953); *State v. Bouchard,* 31 Wn. App. 381, 384, 639 P.2d 761 (1982). Here, however, the aggregate effect of the passage of time and the leading nature of the mother's questions attenuated the degree of

---

[1]*Beck v. Dye,* 200 Wash. 1, 9–10, 92 P.2d 1113, 127 A.L.R. 1022 (1939) set forth the oft–quoted elements of the common law res gestae hearsay exception:

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

reliability of Trina's statements beyond that countenanced under the strict limits of the excited utterance exception. Hence, the trial court improperly admitted the hearsay declaration under ER 803(a)(2).

Such a conclusion, however, does not preclude the admission of the evidence under the broader statutory child sexual abuse exception. RCW 9A.44.120 provides:

Admissibility of child's statement—Conditions. A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

Slider contends that admitting the hearsay under this statute was improper because (1) Trina was not "unavailable" as a witness; (2) it amounted to an ex post facto application of the law; (3) the enactment of the statutory exception amounted to an unconstitutional usurpation of a judicial function; and (4) it denied him an opportunity to confront the witness in contravention of the state and federal constitutions.

## A. Unavailability

ER 804(a) defines "Unavailability as a witness" to include situations where the declarant "(3) Testifies to a

lack of memory of the subject matter of his statement; . . ." Trina's testimony at a pretrial hearing clearly showed that she lacked any memory of the event, although she did remember Slider having babysat her. Therefore, the court properly ruled that Trina was "unavailable" as a witness.[2]

### B. Ex Post Facto

The United States Supreme Court defined ex post facto laws as those falling within the following four categories:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime,* or makes it *greater* than it was, when committed. 3d. Every law that changes the punishment, and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence* and receives less, or different testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

*Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798), quoted in *State v. Clevenger,* 69 Wn.2d 136, 141, 417 P.2d 626 (1966).

In *Clevenger,* the defendant claimed that the application of a statute, which was passed after the commission of the crime but before trial and which made his wife competent to testify against him, ran afoul of the fourth category above. Rejecting his argument, our court quoted from *Hopt v. Utah,* 110 U.S. 574, 590, 28 L. Ed. 262, 4 S. Ct. 202 (1884):

> Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be

---

[2]No question has been raised concerning Trina's competence to testify. Nevertheless, the fact that Trina may have been incompetent to testify at the time she made her declaration or at the time of trial is not dispositive with respect to the admission of the hearsay declarations, provided the circumstances sustain the theory upon which the exception was founded. *Beck v. Dye,* 200 Wash. 1, 14, 92 P.2d 1113, 127 A.L.R. 1022 (1939) (Jeffers, J., dissenting); *State v. Bloomstrom,* 12 Wn. App. 416, 418–19, 529 P.2d 1124 (1974).

obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged.

*Clevenger*, at 142. *See also State v. Pope*, 73 Wn.2d 919, 924, 442 P.2d 994 (1968). Because RCW 9A.44.120 did not increase the punishment nor alter the degree of proof essential for a conviction, its application in the present case did not amount to a perversion of the prohibition against ex post facto laws.

### C. Legislative Power To Enact RCW 9A.44.120

■ Slider argues that the "separation of powers" doctrine prohibits the Legislature from promulgating evidentiary rules, and that our Supreme Court's refusal to adopt the federal "catch–all" hearsay exceptions (Fed. R. Evid. 803(24) and 804(b)(5))[3] prohibits the application of this particular statute. By adopting ER 802, however, our Supreme Court implicitly, if not expressly, recognized the Legislature's authority to promulgate evidentiary rules. "Hearsay is not admissible except as provided by these

---

[3]Fed. R. Evid. 803(24) and 804(b)(5) provide in part:

"Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

rules, by other court rules, *or by statute.*" (Italics ours.) ER 802. Our Supreme Court has also recognized (implicitly) the Legislature's authority to enact evidentiary rules when it analyzed the rape shield statute, RCW 9A.44.020. *See, e.g., State v. Hudlow,* 99 Wn.2d 1, 659 P.2d 514 (1983). Accordingly, we find that the Legislature has not overstepped its authority as limited by the "separation of powers" doctrine.

## D. Witness Confrontation

█ A defendant's right to confront witnesses against him (guaranteed by the sixth amendment to the United States Constitution and article 1, section 22 (amendment 10) of the Washington State Constitution) is not absolute. *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973); *State v. Carter,* 23 Wn. App. 297, 299, 596 P.2d 1354 (1979). The United States Supreme Court recently ruled on the admissibility of hearsay statements with respect to the confrontation clause:

> In sum, when a hearsay declarant is not present for cross–examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), quoted in *State v. Parris,* 98 Wn.2d 140, 145, 654 P.2d 77 (1982).

It cannot be disputed that the child sexual abuse exception is not a "firmly rooted" hearsay exception. Therefore, "particularized guarantees of trustworthiness" are required before the hearsay is admissible. It has been suggested that this phrase ("particularized guarantees of trustworthiness") requires a higher standard of reliability as a substitute for the traditional hearsay exceptions. Comment, *Confronting Child Victims of Sex Abuse: The Unconstitutionality of*

*the Sexual Abuse Hearsay Exception,* 7 U. Puget Sound L. Rev. 387, 402 (1984). We are inclined to agree.

The fact that the act requires "corroborative evidence of the act" does not fulfill this higher standard. Corroboration of the sexual abuse alone "does not lend particular trustworthiness to the child's statement regarding the identity of the abuser". 7 U. Puget Sound L. Rev. at 402. Nevertheless, this corroborative evidence may certainly be considered in the trial court's balancing process.[4]

To fulfill the judicial interpretations of a defendant's confrontation rights requiring "particularized guarantees of trustworthiness," our Legislature mandated that the trial court evaluate "in a hearing conducted outside the presence of the jury . . . the time, content, and circumstances" surrounding the child's statement.

First, although the "time" between the event and declarations may be too great to fulfill the strict requirements of the excited utterance exception, the declarations were made while the child was in some pain or discomfort as a result of the incident, with no intervening events, other than sleep, to impugn her memory or ability to relate the incident accurately.

Second, although the leading nature of the questions raises some concern, we find the "content" of both the declarations and questions to be framed in language that a child of tender years would be expected to use and understand. *See United States v. Nick,* 604 F.2d 1199 (9th Cir. 1979).

---

[4]Several attendant circumstances to be considered in this balancing process were set forth in footnote 10 in the case of *United States v. Alvarez,* 584 F.2d 694, 702 (5th Cir. 1978). These guidelines for the determination of the trustworthiness of extrajudicial statements include: (1) whether the out–of–court declarant had any apparent motive to misrepresent the matter; (2) the general character of the speaker; (3) whether other people heard the out–of–court statement; (4) whether the statement was made spontaneously; and (5) the timing of the declaration and the relationship between the speaker and the witness. These are not exclusive, however. *State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982).

Finally, the "circumstances" surrounding the declarations do not suggest that the child's statements were the result of fabrication or influence, or the exercise of choice or judgment. Trina initiated the questioning with a spontaneous declaration, *i.e.*, "owee", and pointing to the area of pain. Also, Trina's very young age strongly militates against the likelihood of fabrication, as well as against a motivation to lie; such experiences would likely not be within her ability to invent nor would she be likely to have the capacity to lie to her mother.

The determination that statements fall within the "excited utterance" exception is one within the trial court's sound discretion and will not be reversed absent a finding of manifest abuse of that discretion. *State v. Bouchard*, 31 Wn. App. 381, 639 P.2d 761 (1982). Similarly, a finding that the statements are within the statutory child sexual abuse exception should not be reversed absent a showing of manifest abuse of that discretion.

Because the trial court admitted the declarations under the strict "excited utterance" exception, it follows that it would also have admitted the declarations under the less strict statutory child sexual abuse exception. Therefore, it is appropriate to consider whether the trial court would have abused its discretion by admitting the evidence under the statutory child sexual abuse exception.

The trial court complied with the statutory requirements, holding a pretrial hearing outside the presence of the jury, finding sufficient indicia of reliability, and finding Trina to have been unavailable as a witness.

Balanced against the "particularized guarantees of trustworthiness" attending this case, particularly in light of Slider's confession, we find that the trial court would not have abused its discretion by admitting the hearsay and conclude that Slider's confrontation right was not contravened to an unconstitutional degree.

Accordingly, the judgment is affirmed.

SCHOLFIELD, J., concurs.
RINGOLD, J., concurs in the result.

Reconsideration denied October 23, 1984.

Review denied by Supreme Court January 18, 1985.