258 P.3d 256

**STATE of Arizona, Appellant,**

v.

**Larry Lloyd CARVER, Appellee.**

**No. 1 CA–CR 10–0594.**

Court of Appeals of Arizona,
Division 1, Department C.

June 28, 2011.

William G. Montgomery, Maricopa County Attorney By Jeffrey Trudigan, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Droban & Company, P.C. By Kerrie M. Droban, Anthem, Attorneys for Appellee.

## OPINION

KESSLER, Judge.

¶ 1 The State of Arizona appeals the trial court's ruling that a 2009 amendment to Arizona Revised Statutes ("A.R.S.") section 13–4062(1) (2010) (the marital communications privilege) cannot be applied to compel a witness to testify about communications made during marriage and before the amendment's effective date. The court based its holding on the conclusion that the amendment is substantive and the legislature did not expressly state the amendment was retroactive. We agree with the State that the amended statute governs the admission of testimony subject to the marital communications privilege and thus is not being applied retroactively. Even if applying the amended statute to prior communications is deemed a retroactive application, the amendment is merely procedural and can be applied to prior communications without the legislature expressly stating the amendment applies retroactively. Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In December 2006, the police found H.Q. dead and R.W. seriously injured from gunshot wounds. In 2007, the State charged the defendant, Larry Lloyd Carver, and his son with first-degree murder, first-degree burglary, aggravated assault, and theft, all arising from the shooting. The police arrested Carver after his wife, Cheryl, told them that Carver made statements to her during their marriage that implicated him in the crimes.

¶3 Shortly before Carver's trial, Cheryl invoked the marital communications privilege and refused to testify about what Carver had allegedly told her.[1] The State dismissed its case against Carver without prejudice.

¶4 In the wake of the dismissal, H.Q.'s family successfully lobbied the legislature to amend A.R.S. § 13–4062(1) to preclude a spouse from invoking the marital communications privilege if that spouse had previously voluntarily given the information to the police. The governor signed the amendment into law in July 2009.

¶5 With the amended language shown in italics, section 13–4062(1) reads:

A person shall not be examined as a witness in the following cases:

1. [N]or can either, during the marriage or afterwards, without consent of the other, be examined as to any communication made by one to the other during the marriage. Either spouse may be examined as a witness for or against the other in a prosecution for an offense listed in § 13–706, subsection F, paragraph 1, ... *if either of the following occurs* :

*(a) Before testifying, the testifying spouse makes a voluntary statement to a law enforcement officer during an investigation of the offense or offenses about the events that gave rise to the prosecution or about any statements made to the spouse by the other spouse about those events.*

*(b) Either spouse requests to testify.*

A.R.S. § 13–4062(1)(a) (emphasis added).[2]

¶6 In December 2009, the State refiled the murder, burglary, and aggravated assault charges against Carver, all of which are included in A.R.S. § 13–706(F)(1) (2010). Carver moved to preclude the State from compelling Cheryl's testimony, arguing the 2009 amendment cannot be applied retroactively to communications he made to her during their marriage and before the amendment.[3] The trial court granted the motion, finding the amendment "clearly regulates primary conduct and alters the legal consequences that attached to such conduct at the time it was committed." The State timely appealed.[4] We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 13–4032(6) (2010).

## DISCUSSION

¶7 The State first argues that "the general requirement" of A.R.S. § 1–244 (2002) (the statute governing the retroactivity of statutes) is not implicated here because the marital communications privilege does not vest until the time of trial.[5] Therefore, according

1. At the time of her refusal, A.R.S. § 13–4062(1) provided, in pertinent part, that "[e]ither spouse, at his or her request, but not otherwise, may be examined as a witness for or against the other in a prosecution for an offense listed in § 13–706, subsection F, paragraph 1."

2. The exception currently found in (1)(b) existed prior to the amendment. *Supra*, n. 1. The 2009 amendment added what is now exception 1(a) and moved the reference to a spouse requesting to testify to exception 1(b).

3. Carver and Cheryl were divorced at the time Carver filed the motion to preclude Cheryl from testifying. However, the marital communications privilege survives the parties' divorce and applies unless waived. *See Ulibarri v. Superior Court*, 184 Ariz. 382, 389, 909 P.2d 449, 456 (App.1995).

   Historically, the defendant spouse holds the marital communications privilege. 1 Daniel J. McAuliffe & Shirley J. Wahl, *Arizona Practice Series: Law of Evidence* § 501:4 (Rev. 4th ed.) ("Ordinarily the holder of a communication privilege is the communicating party."). However,

that is not the case in Arizona's marital communications privilege. Prior to 2009, either spouse could testify as to a marital communication if the testifying spouse requested to testify. After the 2009 amendment, the legislature simply eliminated the privilege if the testifying spouse voluntarily told police about the communications during an investigation of the offense.

4. We have considered whether the appeal is premature because we do not know whether Cheryl will "request to testify" at trial, thereby waiving the privilege pursuant to section 13–4062(1)(b). However, the State subpoenaed her to testify at the trial on the refiled charges, indicating the State believed she would not testify voluntarily. It then dismissed the case without prejudice to appeal the court's order which would have precluded her testifying involuntarily. The appeal is thus not premature because if the State waited until the jury was sworn and then Cheryl refused to testify, jeopardy would have attached and any appeal would be moot.

5. Section 1–244 provides "[n]o statute is retroactive unless expressly declared therein."

to the State, "applying the 2009 amendment to a 2010 court proceeding does not constitute a 'retroactive' application" of A.R.S. § 13–4062(1)(a). The State alternatively contends that even if such application was retroactive, the amendment is merely procedural and therefore can be applied retroactively without the amendment expressly stating it is to be applied retroactively. Both questions as applied to an amendment to the marital communications privilege present issues of first impression in Arizona.

¶ 8 "We review de novo issues involving interpretation, application, and retroactivity of statutes." *State v. Williams*, 220 Ariz. 331, 335, ¶ 11, 206 P.3d 780, 784 (App.2008). "If the language of a statute is clear and unambiguous, we must give it effect without resorting to any rules of statutory construction." *State v. Barnett*, 209 Ariz. 352, 354, ¶ 7, 101 P.3d 646, 648 (App.2004) (quoting *State v. Johnson*, 171 Ariz. 39, 41, 827 P.2d 1134, 1136 (App.1992)).

¶ 9 The question before us is the same as in *In re Shane B.*: "[T]he dispositive issue is whether the ... court's application of [the statute] was indeed retroactive, and if so, whether such application is permissible." 198 Ariz. 85, 86, ¶ 4, 7 P.3d 94, ·95 (2000).

■ ¶ 10 We hold that application of the 2009 amendment of A.R.S. § 13–4062(1) to testimony offered after its effective date is not retroactive in nature, regardless of whether the underlying conduct that gave rise to the proceedings or the communication occurred prior to the amendment. We agree with the reasoning of other courts that applying an amendment to the marital communications privilege to court proceedings on or after the amendment's effective date is not a retroactive application even if the crime and communication occurred before the amend-

ment. *People v. Dolph–Hostetter*, 256 Mich. App. 587, 664 N.W.2d 254, 262 n. 7 (2003) ("The marital-communications privilege is invoked at the time of the pertinent court proceedings and thus is not 'vested' at an earlier date."); *State v. Clevenger*, 69 Wash.2d 136, 417 P.2d 626, 631 (1966) (holding that the marital communications privilege is invoked only at the time testimony is offered and not at the time the communication occurred).

¶ 11 In *Clevenger*, the Washington Supreme Court found unpersuasive the criminal defendant's argument that retroactive application of an amendment to the marital communications privilege was erroneous because the legislature did not expressly state the amendment was retroactive.[6] *Id*. The court held that because "the privilege is not asserted at the time the action is filed but only when the testimony of the spouse is offered at a trial or hearing," "the fair meaning of the statute is that it shall apply in trials or hearings which are held after the effective date of the act"; thus, applying the restriction of the privilege to later testimony is prospective in nature. *Id*. The Michigan Court of Appeals reached the same result in *Dolph–Hostetter*, relying upon *Clevenger*. 664 N.W.2d at 262, 262 n. 7.[7]

¶ 12 Additionally, many courts have held that in general, the "applicability and availability of a privilege should be governed by the current law in force at the time of trial and not at the time the alleged confidential communication took place." *Scott v. McDonald*, 70 F.R.D. 568, 573 (N.D.Ga.1976) (citing 97 C.J.S. Witnesses § 51, p. 439 (1957) (now 98 C.J.S. Witnesses § 298) (stating that the competency of witnesses to testify is determined by the law in force at the time of

---

6. In *Clevenger*, the marital communications privilege was very similar to our privilege: "[N]or can either during marriage or afterward, be without the consent of the order [sic], examined as to any communication made by one to the other during marriage." 417 P.2d at 629. The Washington legislature added an exception to the privilege that provided: a spouse cannot invoke the privilege in a criminal prosecution "for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian." *Id*. at 631.

7. Michigan's marital communications privilege provided "a married person or a person that has been married previously shall not be examined as to any communication made between that person and his or her spouse or former spouse during the marriage." 664 N.W.2d at 255. The legislature "changed the law to provide that the decision whether to testify about marital communications lies with the person testifying." *Id*.

trial)); *see, e.g., Wrape v. Hampson,* 78 Ind. 499, 500 (1881); *Burk v. Putman,* 113 Iowa 232, 84 N.W. 1053, 1054 (1901); *O'Bryan v. Allen,* 108 Mo. 227, 18 S.W. 892, 893 (1891) (regarding an amendment changing the competency of witnesses to testify in a contract case: "Laws which change the rules of evidence relate to the remedy only, may be applied to existing causes of action, and are not precluded from such application by the constitutional provision.... The changes which are enacted may lawfully be made applicable to existing causes of action, even in those states in which retrospective laws are forbidden"); *Whitehurst v. Pettipher,* 87 N.C. 179, 179 (1882); *Prod. Credit Ass'n of Mandan v. Olson,* 280 N.W.2d 920, 927 (N.D. 1979); *John v. Bridgman,* 27 Ohio St. 22, 43 (1875); *Dyer v. Blackhawk Leather LLC,* 313 Wis.2d 803, 758 N.W.2d 167, 176 (Wis.App. 2008).[8]

¶ 13 We agree with the reasoning in *Clevenger* and *Dolph–Hostetter* that the marital communications privilege as applied here does not vest until a person is called as a witness or sought to be deposed. We note that the contrary decisions cited in n.8, *supra,* are distinguishable because the communicating party, such as a client speaking with her attorney or mental health professional, has an expectation that communications that are privileged will remain so if the law changes. The marital communications privilege here is different because at the time of the communication in this case, the testifying spouse (Cheryl) held the privilege in cases involving offenses listed in A.R.S. § 13–706(F)(1) or the other offenses enumerated in the privilege statute, while the defendant spouse (Carver) held the privilege at all other times that an exception did not apply. *Supra,* n. 3. Thus, unlike other privileges in which the party opposing disclosure has a

valid expectation that he or she holds the privilege (*e.g.,* a client relating information privileged under the attorney-client privilege), Carver had no expectation that his statements to Cheryl would be privileged if Cheryl requested to testify. Thus, the amendment adding exception 1(b) to the statute in no way affected any expectation by Carver that he held the privilege. We therefore limit our holding to the application of this amendment to the marital communications privilege.

¶ 14 Accordingly, we hold that the law in effect at the time the evidence is sought by discovery or trial testimony, not the time the offense was committed or communications made, governs the admission of testimony subject to the marital communications privilege. Since the 2009 amendment became effective before Carver's retrial, Ariz. Sess. Laws, ch. 155, § 3 (1st Reg. Sess.), the State can compel Cheryl to testify against Carver. The trial court erred in precluding Cheryl's testimony.

¶ 15 Notwithstanding our holding above, we agree with the State's alternative argument that the amendment was merely procedural; thus, it can be applied retroactively in the absence of express statutory language declaring its retroactivity.

¶ 16 A statute that regulates the "conduct of the trial" can be applied retroactively even when the statute is silent as to retroactivity. *Garcia v. Browning,* 214 Ariz. 250, 253, ¶ 12, 151 P.3d 533, 536 (2007), *superseded by statute on other grounds; Shane B.,* 198 Ariz. at 87, ¶ 8, 7 P.3d at 96; *see also Landgraf v. USI Film Prods.,* 511 U.S. 244, 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *State Comp. Fund of Ariz. v. Fink,* 224 Ariz. 611, 613, ¶¶ 8–9, 233 P.3d 1190, 1192 (App.

---

**8.** Two courts have reached a contrary result. In *State v. Pelley,* 828 N.E.2d 915, 919 (Ind.2005), the court held that a recently created privilege governing communications between a counselor and a client did not apply retroactively to restrict admission of prior communications because the parties had not relied on any such privilege in making the communications. Thus, the court held that the applicability of the privilege is determined by the date of the communication, not the date disclosure is sought. In *Salt Lake Child and Family Therapy Clinic, Inc. v. Frederick,* 890

P.2d 1017, 1019–20 (Utah 1995), another case involving discovery of confidential information between counselor and client, the court held that a restriction on a previously-existing privilege could not be applied to a prior communication because the client had a substantive, vested "right to have communications which had been conducted under and expectation of confidentiality kept private." Aside from the differences discussed in ¶ 13, *infra,* these cases go against the great weight of the other caselaw, and we adopt what we perceive as the majority view.

2010). However, a law regulating primary or substantive conduct is retroactive only if expressly declared therein. *Garcia*, 214 Ariz. at 252–53, ¶¶ 7, 12, 151 P.3d at 535–36 (internal quotation marks omitted) (citing A.R.S. § 1–244). When a new law regulates primary or substantive conduct, "the date of the offense is the operative event [in a] retroactivity analysis." *Id.* at ¶ 14; *Shane B.*, 198 Ariz. at 87, ¶ 7, 7 P.3d at 96.

¶ 17 As our supreme court has explained, the definition of procedural versus substantive rights "has proven elusive." *Seisinger v. Siebel*, 220 Ariz. 85, 92, ¶ 29, 203 P.3d 483, 490 (2009); *Shane B.*, 198 Ariz. at 88, ¶ 9, 7 P.3d at 97. Further muddying the water, courts have used different terms to determine whether an amendment can be applied retroactively without violating the provisions of section 1–244: the *Garcia* court used the term "primary conduct," *infra* ¶ 18, while the *Shane B.* court used the terms "substantive" and "procedural," *infra* ¶ 18. *See also Seisinger*, 220 Ariz. at 91, ¶ 24, 203 P.3d at 489 (stating, in a separation of powers analysis, "we must ... determine whether the challenged statutory provision is substantive or procedural").

¶ 18 *Garcia* did not define "primary conduct," but it held that a law that shifted the burden of proof, declared what types of conduct are no longer criminal or wrongful, and altered "the legal consequences that attached to such conduct at the time it was committed" was a law that regulated primary conduct and was therefore substantive in nature. 214 Ariz. at 253, ¶ 14, 151 P.3d at 536. Both *Shane B.* and *Seisinger* defined "substantive" laws as those that create, define, and regulate rights. 198 Ariz. at 88, ¶ 9, 7 P.3d at 97, 220 Ariz. at 93, ¶ 29, 203 P.3d at 491 (respectively). *Shane B.* further defined "substantive" in the criminal context as defining a crime or involving the length or type of punishment. 198 Ariz. at 88, ¶ 9, 7 P.3d at 97 (citation and internal quotation marks omitted). On the other hand, a procedural law "has no effect on the underlying offense or the resulting punishment for that offense" and "prescribes the method of enforcing such rights or obtaining redress." *Id.* at ¶¶ 9, 11.

¶ 19 We follow *Seisinger*'s lead and approach our analysis of the retroactivity of A.R.S. § 4062(1)(a) "with the goal of determining, absent labels, the true function of the statute." 220 Ariz. at 93, ¶ 31, 203 P.3d at 491. If the true function of the statute is to increase the burdens of production or proof, *see Garcia, infra* ¶ 22; change the elements of the offense, *see Seisinger, infra* ¶ 21; *Shane B., supra* ¶ 18; criminalize conduct that was not previously criminal or vice versa, *see Garcia, supra* ¶ 18; or increase the punishment for the underlying conduct, *see Shane B., infra* ¶ 23; the law does not apply retroactively absent express language stating so (and of course subject to *ex post facto* analysis).

¶ 20 The trial court relied on *Garcia*, *Shane B.*, and *Seisinger* to hold that the amendment "clearly regulates primary conduct and alters the legal consequences that attached to such conduct at the time it was committed." We disagree.

¶ 21 In *Seisinger*, the statute at issue governed the qualifications of a standard-of-care expert in a medical malpractice case. 220 Ariz. at 87, ¶ 3, 203 P.3d at 485. The issue was whether the statute conflicted with the Arizona Rules of Evidence and violated the separation of powers doctrine. *Id.* at 88, ¶ 3, 203 P.3d at 486. The Arizona Supreme Court held that the statute was "substantive" because it required "a certain type of evidence to prove an element of the tort." *Id.* at 95, ¶ 40, 203 P.3d at 493.

¶ 22 In *Garcia*, the issue was, when a criminal defendant claimed self-defense as a justification for his conduct, whether amendments that shifted the burden of proof from a defendant (to prove the justification) to the state (to disprove the justification) applied retroactively. 214 Ariz. at 251, ¶ 1, 151 P.3d at 534. The Arizona Supreme Court held such a change regulated primary conduct because it altered the legal consequences by shifting the burden of proof. *Id.* at 253, ¶ 14, 151 P.3d at 536. Therefore, the amendments were substantive and could not be applied retroactively absent the legislature's express statements stating so. *Id.*

¶ 23 In *Shane B.*, the issue was whether the trial court erred in retroactively applying

a statute requiring the court to designate a juvenile offender a "first time felony juvenile offender," which could have subjected him to the jurisdiction of the adult court if he committed another felony offense. 198 Ariz. at 86, ¶¶ 1, 2, 7 P.3d at 95. The statute took effect after he committed the offense but before his adjudication. *Id.* The Arizona Supreme Court held that retroactive application of the amendment did not violate the prohibition against *ex post facto* laws because the amendment was merely procedural; it did not change or increase the punishment for the crime the juvenile committed. *Id.* at 87, 90, ¶¶ 6, 16, 7 P.3d at 96, 99.

¶ 24 The case before us is most analogous, at least in terms of the nature of the amendment, to *Shane B.* Both there and in this case, the amendments do not increase the burdens of production or proof, change the elements of the offense, criminalize conduct that was not previously criminal, or increase the punishment for the underlying conduct. Thus, the case is dissimilar to *Seisinger* and *Garcia,* in which the statute and amendment, respectively, governed the burdens of production and proof and affected the legal consequences of the underlying conduct. The amendment here merely allows testimony that was previously excluded and thus is not substantive.

¶ 25 The trial court relied heavily upon dicta in *Seisinger* that stated: "We have also recognized that common law privileges are substantive and generally subject to legislative amendment." 220 Ariz. at 93, ¶ 30, 203 P.3d at 491. The court made that statement in a separation of powers analysis as an analogy and not in regards to whether an amendment applies retroactively.[9] Regardless, it is the court's analysis, not its diligent attempt to define what are "substantive" changes, that guides us. *See id.* at ¶ 31. *Seisinger* held that the statute was substantive because it increased the burden of production to prove a tort by restricting the

type of expert testimony that can be received. *Id.* at 95, ¶ 38, 203 P.3d at 493. Here, while the 2009 amendment did change how a party can prove the elements of the claim by expanding what evidence is admissible, it did not place any additional burden of proof or production on the defense or State.

¶ 26 Lending further support to our conclusion, other courts that have addressed the question of retroactivity of an amendment to the marital communications privilege, albeit under an *ex post facto* analysis not present here, have reached the same conclusion as we do today.[10] That is, amendments to marital communications privileges are not substantive, but procedural rights that vest at trial. *Dolph–Hostetter,* 664 N.W.2d at 260–61; *Palmer v. Clarke,* 408 F.3d 423, 431 (8th Cir.2005) (upholding the Nebraska Supreme Court's determination that retroactive application of an amendment to Nebraska's marital communications privilege was not a violation of federal *ex post facto* prohibition); *State v. Bragan,* 920 S.W.2d 227, 241 (Tenn.Cr.App.1995) (holding "laws which change rules of procedure but which do not affect any substantial right of a defendant are not *ex post facto* laws," including an amendment to the marital communications privilege); *Freeman v. State,* 786 S.W.2d 56, 58 (Tex.App.1990); *Carpenter v. Commonwealth,* 51 Va.App. 84, 654 S.E.2d 345, 350–51 (2007); *Clevenger,* 417 P.2d at 630; *cf. Huckaby v. State,* 262 Ark. 413, 557 S.W.2d 875, 878 (1977) (holding that retroactive application of change in law allowing witness to testify at time of trial who would have been prevented from testifying at time of offense was not a violation of *ex post facto* principles); *State v. Eldredge,* 773 P.2d 29, 32 (Utah 1989) (same).

¶ 27 Our conclusion is further supported by several United States Supreme Court decisions. The Court has determined that an amendment that enlarges the class of persons competent to testify does not violate

---

9. There is no separation of powers issue before us because privileges are created by statute or common law, not by rules of the court. *Ulibarri,* 184 Ariz. at 387, 909 P.2d at 454; Ariz. R. Evid. 501 ("Except as otherwise required by ... applicable statute or rule, privilege shall be governed by the principles of the common law....").

10. The *ex post facto* analysis is substantially similar to a retroactivity analysis. *See Shane B.,* 198 Ariz. at 87–88, ¶¶ 6, 8, 7 P.3d at 96–97.

prohibitions against *ex post facto* laws because there is no vested right to a statute regulating the competency of witnesses to testify. *Thompson v. Missouri*, 171 U.S. 380, 387–88, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (holding that a statute removing an exclusion that prevented persons from testifying based on public policy grounds does not violate the prohibition against *ex post facto* laws); *Hopt v. Utah*, 110 U.S. 574, 589, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (holding that alterations that remove "existing restrictions upon the competency of certain classes of persons as witnesses" can be made applicable to later prosecutions or trials, "without reference to the date of the commission of the offense charged"), *abrogated on other grounds as recognized by Campbell v. Blodgett*, 978 F.2d 1502, 1509 (9th Cir.1992).

¶ 28 The Court has also determined that no person has a vested right in a rule of evidence that governs the "competency of certain classes of persons as witnesses." *Carmell v. Texas*, 529 U.S. 513, 543–44, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (quoting *Hopt*, 110 U.S. at 590, 4 S.Ct. 202). "Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged." *Id.; see also State v. Fell*, 210 Ariz. 554, 560, ¶ 22, 115 P.3d 594, 600 (2005) (quoting *Aranda v. Indus. Comm'n of Ariz.*, 198 Ariz. 467, 470, ¶ 11, 11 P.3d 1006, 1009 (2000) (stating "litigants have no vested right in a given mode of procedure")).

¶ 29 While Carver did not argue below or on appeal that the retroactive application of A.R.S. § 13–4062(1)(a) violates the federal and state *ex post facto* provisions, the cases cited above are analogous to the issue before us and support our conclusion that the amendment to the marital communications privilege can be applied retroactively.

## CONCLUSION

¶ 30 We hold that the amended marital communications privilege governs the admission of witness testimony in proceedings held after its enactment and thus is not being applied retroactively. In any event, the trial court can apply the 2009 amendment to cases arising before, but tried on or after, its enactment because the amendment is procedural, not substantive, and therefore does not need express legislative statements that it is to be applied retroactively.

¶ 31 Accordingly, we reverse the trial court's ruling and remand this matter for further proceedings consistent with this opinion.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and MICHAEL J. BROWN, Judge.